1    SEDGWICK, DETERT, MORAN & ARNOLD LLP
     REBECCA A. HULL  Bar No. 99802
2    CHRISTOPHER KELLER  Bar No. 178491
     One Market Plaza
3    Steuart Tower, 8th Floor
     San Francisco, California 94105
4    Telephone: (415) 781-7900
     Facsimile: (415) 781-2635
5

6    Attorneys for Defendants

7

8                 UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10   David Walker, | CASE NO. C 07 3772 WHA |
| 11         Plaintiff, | **DEFENDANTS METROPOLITAN LIFE** |
| 12 | **INSURANCE COMPANY AND KAISER** |
| 13       v. | **PERMANENTE FLEXIBLE BENEFITS** |
| | **PLAN'S NOTICE AND  MOTION FOR** |
| 14   Metropolitan Life Insurance Company, | **SUMMARY JUDGMENT AND** |
|     Kaiser Permanente Flexible Benefits Plan, | **MEMORANDUM OF POINTS AND** |
| 15   et al., | **AUTHORITIES IN SUPPORT THEREOF** |
| 16        Defendants. | |
| 17 | **DATE:  FEBRUARY 14, 2008** |
| 18 | **TIME:  8:00 A.M.** |
| | **COURTROOM:  9** |
| 19 | **JUDGE:  HONORABLE WILLIAM ALSUP** |

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT ......................................... 2

II.   STATEMENT OF FACTS ................................................................................................. 3

    A.    LTD Benefits Under the Plan ................................................................................. 3

    B.    Chronological Summary of Claim ......................................................................... 5

         1.    Walker's January 2006 Claim ..................................................................... 5

         2.    MetLife's March 1, 2006 Interview of Walker ........................................... 5

         3.    MetLife Obtained and Reviewed All Identified Records in
             April 2006 ................................................................................................... 6

         4.    The Referral to Dr. Kelley .......................................................................... 7

         5.    MetLife Accepted Additional Medical Information in April
             2006 ............................................................................................................ 7

         6.    Dr. Kelley's Report .................................................................................... 7

         7.    MetLife Seeks Attending Physician Comments on Dr. Kelley's
             Report ......................................................................................................... 8

         8.    MetLife Credits Dr. Kelley's Opinion and Denies the Claim ..................... 9

         9.    August 10, 2006 Notice of Appeal .............................................................. 9

         10.   Additional Medical Information submitted in August 2006 ....................... 9

         11.   December 12, 2006 Request for Extension to Submit Appeal
             Granted ....................................................................................................... 9

         12.   Receipt of Social Security Disability Benefits .......................................... 10

         13.   February 8, 2007 Appeal Letter with Additional
             Documentation. ........................................................................................ 10

         14.   MetLife's February 14, 2007, Record Review ......................................... 10

         15.   Review by Independent Board-Certified Cardiologist and
             Ophthalmologist ....................................................................................... 11

         16.   Dr. Rosenberg's Report ............................................................................ 12

         17.   Dr. Turok's Report ................................................................................... 12

SEDGWICK
DETERT, MORAN & ARNOLD LLP

SF/1465680v1    DEFENDANTS' NOTICE AND MOTION FOR SUMMARY JUDGMENT AND MPA IN SUPPORT THEREOF

1

**Table of Contents**
**(Continued)**

2

**PAGE**

3      18.    IPC Reports Sent to Attending Physicians with Questions........................ 13

4      19.    Dr. Chuang's Reply Regarding IPC Reports ............................................. 13

5      20.    MetLife's Further Questions to IPCs in June 2007................................... 14

6      21.    MetLife's Denial of Walker's Appeal....................................................... 14

7  III.   ARGUMENT ...................................................................................................................... 15

8      A.    Under *Abatie*, the Decision Is Entitled to a High Degree of Deference................ 15

9          1.    Abuse of Discretion Review Applies......................................................... 15

10          2.    The Determination Should Be Afforded a High Degree of
11                Deference .................................................................................................. 16

12      B.    Walker Was Not Disabled Under the Plan from Performing His
13              Occupation .......................................................................................................... 17

14          1.    Walker Failed to Establish Functional Impairment ................................... 17

15          2.    MetLife Was Entitled to Credit the IPCs' Opinions................................. 19

16          3.    The Social Security Administration Decision Is not
17                Determinative............................................................................................. 20

18  IV.   CONCLUSION ................................................................................................................... 21

19

20

21

22

23

24

25

26

27

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP
28

DEFENDANTS' NOTICE AND MOTION FOR SUMMARY JUDGMENT AND MPA IN SUPPORT THEREOF

1

# TABLE OF AUTHORITIES

2

**PAGE**

3

## FEDERAL CASES

4

*Abatie v. Alta Health & Life Ins. Co.*,
5
    458 F. Supp. 955 (9th Cir. 2006) ........................................................................................15, 16

6

*Black & Decker Disability Plan v. Nord*,
    538 U.S. 822 (2003)............................................................................................................19, 21

7

*Bratton v. Metropolitan Life Inc. Co*,
8
    439 F. Supp. 2d 1039 (C.D. Cal. 2006) ...........................................................................17, 18

9

*Firestone Tire & Rubber Co. v. Bruch*,
    489 U.S. 101 (1989)...............................................................................................................15

10

*Hunt v. Metropolitan Life Ins. Co.*,
11
    425 F.3d 489 (8th Cir. 2005) ...........................................................................................19, 20

12

*Jordan v Northrop Grumman Corp Welfare Benefit Plan*,
    63 F. Supp. 1145 (C.D. Cal. 1999), *aff'd*, 370 F. 3d at 882................................................18

13

*Leipzig v. AIG Life Ins. Co.*,
14
    362 F. 3d 406 (7th Cir. 2004) ...............................................................................................19

15

*Madden v. ITT Long Term Disability Plan*,
16
    914 F.2d 1279 (9th Cir. 1990) ...............................................................................................21

17

*Martin v. Continental Casualty Co.*,
    96 F. Supp. 2d 983 (N.D. Cal. 2000) .....................................................................................19

18

*Semien v. Life Ins. Co. of North America*,
19
    436 F. 3d 805 (7th Cir. 2006) ...............................................................................................19

20

## FEDERAL STATUTES

21

29 C.F.R. § 2560-503-1(h)(3)(iii), (4) ..........................................................................................17

22

29 U.S.C. § 1001...........................................................................................................................1, 3

23

24

25

26

27

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP
28

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2      **PLEASE TAKE NOTICE** that on February 14, 2008, at 8:00 a.m., or as soon thereafter

3  as the matter may be heard, in Courtroom 9 of this Court, located at 450 Golden Gate Avenue,

4  19th Floor, San Francisco, California 94102, defendants Metropolitan Life Insurance Company

5  ("MetLife") and Kaiser Permanente Flexible Benefits Plan ("Plan") will, and hereby do, move

6  for summary judgment on plaintiff David Walker's claims for long term disability benefits under

7  the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. section 1001, *et seq.*

8      This motion is made on grounds that MetLife, the Plan's claim administrator, did not

9  abuse its discretion in denying benefits on the ground that plaintiff's alleged disability did not

10  preclude him from performing his own occupation, and its determination is entitled to a high

11  degree of deference under all of the circumstances. As such, defendants are entitled to summary

12  judgment.

13      This motion is based on this notice of motion and motion, the accompanying

14  memorandum of points and authorities, the administrative record lodged herewith, the

15  declaration of Joanne Carroll, the declaration of Maria Goschy, the pleadings and other

16  documents on file in this action, and on such other and further matters as may be presented to the

17  Court at or prior to the hearing.

18
   Dated: January 10, 2008                SEDGWICK, DETERT, MORAN & ARNOLD LLP
19

20
                                          By  /s/ Rebecca A. Hull
21                                                   Rebecca A. Hull

22
                                          Attorneys for Defendants
23                                        Metropolitan Life Insurance Company and Kaiser
                                          Permanente Flexible Benefits Plan
24

25

26

27

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP  28

DEFENDANTS' NOTICE AND MOTION FOR SUMMARY JUDGMENT AND MPA IN SUPPORT THEREOF

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiff David Walker worked as a Local Area Network ("LAN") Administrator for Kaiser Foundation Hospitals ("KFH"). His job duties were not taxing, involving approximately five to six hours per day sitting at a desk working on a computer, and approximately one to two hours of standing, walking or bending.

Walker's last day of work was August 21, 2005, but he did not present his claim for long term disability ("LTD") benefits under the Plan until January 4, 2006, at age 62. His claim asserted that he was totally disabled from working in his occupation. LTD benefits under the Plan are funded through a group policy of insurance issued by Metropolitan Life Insurance Company ("MetLife"), which is also the claim administrator. The Plan confers discretionary authority on MetLife to interpret the terms of the Plan, and to determine eligibility for benefits.

Walker alleged he was unable to work because of severe pedal edema, hypertensive heart disease, diabetes with diabetic neuropathy, glaucoma, macular degeneration and nonproliferative diabetic retinopathy. Although the medical documentation established that Walker was disabled through October 24, 2005, it did not establish he remained totally disabled after October 24, 2005, the date as of which his treating doctor released him to return to work. The elimination period is six months, beginning on the first day of disability (that is, the participant must be totally disabled for six continuous months before any benefits will be payable). Because Walker alleged that he was disabled as of August 21, 2005, his elimination period extended to February 10, 2006. Since MetLife determined that Walker was not disabled throughout the full elimination period, he was not entitled to benefits under the Plan.

The medical records Walker submitted in support of his claim were reviewed by three physicians who are Board-certified in appropriate specialties. Each opined that Walker did not have a condition that functionally precluded him from his sedentary occupation as a LAN administrator. Walker's claim for benefits was denied, because MetLife determined, after crediting the independent medical opinions, that the record did not establish a condition that rendered him totally disabled under the Plan.

Walker now sues under the Employee Retirement Income Security Act of 1974

DEFENDANTS' NOTICE AND MOTION FOR SUMMARY JUDGMENT AND MPA IN SUPPORT THEREOF

1   ("ERISA"), 29 U.S.C. section 1001 *et seq.*, alleging MetLife as claim administrator abused its

2   discretion in denying his claim. However, the evidence in the Administrative Record shows that

3   the denial was not an abuse of discretion. Therefore, defendants request that the Court grant their

4   motion and enter judgment in their favor.

5   **II.**    **STATEMENT OF FACTS**

6        Walker participated in the Plan through his employment at KFH where he worked in the

7   as a LAN Administrator. (ADMIN 570).[1] Walker's job as a LAN Administrator involved sitting,

8   walking and bending, and occasional lifting of up to 50 pounds. (ADMIN 0568-571). His job

9   required him to do, among other things, "troubleshooting, diagnostics, research, evaluation and

10   documentation of various PC/LAN and data communications solutions and alternatives.

11   Provides technical analysis and support on PC/LAN design and configuration issues regarding

12   LAN connectivity and operability." (ADMIN 571). Walker was age 62 when he filed his claim

13   in January 2006. (ADMIN 576.) His last day of work was August 21, 2005. (*Id.*)

14        Walker disclosed in his claim submissions that while he was off work because of alleged

15   disability, he was spending several hours per day on the computer, as well as doing chores

16   around the house, including yard work. (ADMIN 314.) He also stated, however, that he did "not

17   believe I will be able to return to work." (ADMIN 314.) His opinion that he would not return to

18   work was, he said, because of the medication he was taking: "At this time I do not believe I can

19   return to work. Not as long as my current meds remain necessary." (ADMIN 314.)

20     **A.**    **LTD Benefits Under the Plan**

21        The Plan provides LTD benefits funded through a group policy of insurance issued by

22   MetLife. (ADMIN 160.) For employees such as Walker who are at least 61 as of the date of

23   disability, the Maximum Benefit Duration under the Plan is 48 months. (ADMIN 109.)

24        Plan participants receive LTD benefits if they are "totally disabled" (as that term is

---

26     [1] Pages of the Administrative Record applicable to Walker's attempt to recover additional
benefits under the Plan are referenced by prefix "ADMIN" followed by the page number(s). *See*
27   Declaration of Maria Goschy and Declaration of Joanne Carroll, filed herewith, authenticating
respective portions of the Administrative Record as filed with the Court.

**SEDGWICK** 28
DETERT, MORAN & ARNOLD llp

1   defined in the Plan). (ADMIN 108.)  The Plan defines "Disabled," in pertinent part, as follows:

2       You are considered totally disabled if:

3       •       During your elimination period . . . and the next 24-month period, you are
        unable to earn more than 80% of your pre-disability earnings at your own
4       occupation for any employer in your local economy, or;

5       •       After the first 24 months, you are unable to earn more than 80% of your
        indexed pre-disability earnings from any employer in your local economy at any
6       gainful occupation for which you are reasonably qualified, taking into account
7       your education, training, experience and pre-disability earnings.

8       Your loss of earnings must be a direct result of your sickness, pregnancy or
        accidental injury.  Economic factors such as, but not limited to, recession, job
9       obsolescence, pay cuts and job-sharing will not be considered in determining
10      whether you meet the loss of earnings test.

11      Your elimination period is the six-month period of time during which no LTD
        benefits are payable, beginning on the day you became disabled.  You must be
12      under continuous care of a doctor during your elimination period.

13  (ADMIN 108.)

14      The Plan sets forth procedures for making benefit claims, including procedures for the

15  submission of claims, determinations approving or denying claims, review of claims that have

16  been denied in whole or in part, and information regarding a participant's rights under ERISA.

17  (ADMIN 009; 109, 160-164.)  Of significance here, the Plan documents confer discretionary

18  authority on the Plan administrator *and other Plan fiduciaries* as follows:

19      Each Named Fiduciary,[2] and each person to whom fiduciary authority shall have
        been allocated or delegated under Section 4.2, *shall full and complete*
20      *discretionary authority with respect to its responsibilities under the Plan and any*
21      *Program hereunder.*  All actions, interpretations, and decisions of a Named

22  _____

23  [2] "Named Fiduciary" is defined in the Plan:  "Named Fiduciaries.  The named fiduciaries with
    respect to each Plan, for purposes of ERISA, shall be the Employers whose employees
24  participate in such Plan.  With respect to each Program in which benefits are provided under a
    Contract in which the Insurer is responsible for review of benefit claim determinations, such
25  Insurer is the named fiduciary with respect to such determinations, pursuant to ERISA
    Regulation § 2560.504-1(g)(2)."  (ADMIN 0007.)  The Plan also defines "Insurer":  "'Insurer'
26  means an insurance company, insurance service organization, or similar organization which is
    subject to regulation under the insurance laws of one or more States, and which is charged with
27  administrative duties (including but not limited to benefit claims processing) under one or more
    Programs."  (ADMIN 0001.)

 28

DEFENDANTS' NOTICE AND MOTION FOR SUMMARY JUDGMENT AND MPA IN SUPPORT THEREOF

Fiduciary or a delegate thereof shall be conclusive and binding on all persons and *shall be given the maximum possible deference allowed by law.*

(ADMIN 0007) [emphasis added].) MetLife, as the Plan's claim administrator, made a discretionary determination that Walker was not eligible for benefits under the Plan, because he was not "disabled" under the Plan throughout the elimination period and thereafter. The Plan documents expressly identify the "Insurer," that is, MetLife, as the entity charged with making such decisions. (ADMIN 0009-10.)

**B.    Chronological Summary of Claim**

1.    Walker's January 2006 Claim

Walker made his claim for Plan benefits on January 4, 2006. (ADMIN 576-77.) Walker reported that his last day of work was August 21, 2005, and that he was disabled because his cardiac problems and blood pressure problems left him with shortness of breath, chest pains, and insufficient stamina to walk around. (ADMIN 576.)

On January 4, 2006, MetLife sent Walker a letter requesting information about his claim, including a statements from his attending physician and from Walker, a job description, a statement from Walker's work supervisor about Walker's job duties, documentation regarding state disability and workers' compensation benefits, and information about his medications. (ADMIN 596.) MetLife gave Walker 30 days to provide the information. (ADMIN 596.)

Dr. Chuang, the treating physician, submitted an Attending Physician Statement ("APS") dated January 25, 2006. According to the APS, Walker's disabling conditions were shortness of breath, cardiomyopathy and hypertension. (ADMIN 588-89.)

2.    MetLife's March 1, 2006 Interview of Walker

MetLife conducted an initial interview of Walker on March 1, 2006. (ADMIN 178, March 1, 2006, 13:28 entry.) Walker told MetLife that in addition to his other diagnoses, he also was being treated for diabetes and glaucoma. (*Id.* ) He stated that he did not plan to return to work, due to what he considered to be side effects of his medication, and also said that his blood pressure was too high. (*Id.* )

Walker confirmed that all treatment since his last day of work on August 20, 2005, had

SEDGWICK
DETERT, MORAN & ARNOLD

1  been at a Kaiser Martinez facility. (*Id.*) MetLife informed Walker that it would be seeking all of

2  his medical records from Kaiser Martinez as part of its claim review. (*Id.*)  Within hours of the

3  conversation with Walker, MetLife sent a request to Kaiser Martinez for Walker's medical

4  records. (ADMIN 178, March 10, 2006, 15:36 entry.)

5              3.    MetLife Obtained and Reviewed All Identified Records in April 2006

6         MetLife obtained doctor's office notes and medical testing results regarding Walker from

7  the Kaiser Martinez facility for the period, from August 1, 2005, just before Walker ceased work,

8  through March 1, 2006. (ADMIN 0550-0567.

9         Those records included office notes from Dr. Chuang, the treating physician, showing

10  that on September 15, 2005, Walker reported experiencing some episodes of blurry vision.

11  (ADMIN 560.)  An optometry consultation on September 21, 2005, with Dr. Oda yielded a

12  visual acuity determination of 20/400 in Walker's left eye, and 20/25 in his right eye.  (ADMIN

13  543.)  On October 11, 2005, Walker returned to Dr. Chuang, who noted a history from Walker

14  that Walker's "[v]ision is stable" and that Walker has had diabetes mellitus for 25 years, "with

15  retinopathy but stable."  (ADMIN 562.)

16         On January 12, 2006, Walker saw Dr. Chuang and reported that he felt his strength still

17  was affected by his myocardial infarction and that he felt that his shortness of breath had been

18  gradually worsening over that past six months.  (ADMIN 564.)

19         Once these medical records had been received from Kaiser, a nurse at MetLife reviewed

20  the medical file and then called to interview Walker on April 10, 2006, about his medical

21  condition. (ADMIN 180.)  During the interview, Walker described his job duties, saying he spent

22  time lifting and carrying computers, crawling on the floor to connect computer wiring, and

23  packing computer equipment. (*Id.*) He claimed to have difficulty reading computer screens

24  because of blurred vision, and reported decreased strength in his arms and legs. (*Id.*)  He also

25  reported that he had been walking for an hour per day, and had traveled in Southeast Asia for the

26  month of December 2005. (ADMIN 181, 182).

27         Walker told MetLife during the April 10 interview that he was not under the care of a

28  cardiologist, and that his cardiac condition was controlled by medication supervised by his

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1 attending physician. (ADMIN 180.) He reported some swelling of the ankles, said he was taking

2 the medication Lasix for swelling, and that he was not under treatment for any other condition.

3 (ADMIN 180-181). The nurse asked Walker if he had any questions, which he did not, and

4 informed him that an independent physician would review his records. (ADMIN 181.)

5                 4.     The Referral to Dr. Kelley

6       On April 11, 2006, following the interview with Walker, a MetLife Nurse Consultant

7 again reviewed and analyzed Walker's entire file, including his job duties and the physical

8 requirements of his job, medical records relating to his heart condition, edema, fatigue, chest

9 discomfort, medication regimen and history, lack of strength, cardiomyopathy, and various tests.

10 (ADMIN 181-182.) MetLife then referred the file to a Board-certified internal medicine

11 specialist, Dr. Kelley, an independent physician consultant ("IPC"), for medical assessment. (*Id.*)

12                 5.     MetLife Accepted Additional Medical Information in April 2006

13       On April 19, 2006, Walker called MetLife and offered additional information regarding

14 his condition. (ADMIN 183.) He reported blurred vision which he said was due to macular

15 degeneration of his right eye. (ADMIN 183.) On April 20, 2006, Walker sent MetLife a letter

16 supplementing his medical information. (ADMIN 535). Walker was told that his file was under

17 review, and would be updated with the additional information. (ADMIN 183.)

18                 6.     Dr. Kelley's Report

19       Dr. Kelley completed her review on April 21, 2006, and discussed her report with the

20 MetLife Nurse Consultant. (ADMIN 183). Dr. Kelley recommended that her report be sent to

21 Dr. Chuang, the attending physician, for a response, and set out questions to be answered by him.

22 (*Id.*)[3] Dr. Kelley opined that Walker was functionally impaired from August 20, 2005, through

23

24      [3] Dr. Kelley requested that the attending physician be asked:

     1.     At this point, what do you feel is the etiology of [Walker's] shortness of breath?
25 What is the planned treatment?

     2.     Has the patient seen a pulmonary physician? Was a diagnosis given?
26

     3.     How severe is the claimant's cardiomyopathy? The tests suggest that his cardiac
27 condition has been stable and not likely contributing to his dypsnea. Please comment.

     4.     Has a cause been found for the patient's complaint of fatigue?
28

DEFENDANTS' NOTICE AND MOTION FOR SUMMARY JUDGMENT AND MPA IN SUPPORT THEREOF

SEDGWICK
DETERT, MORAN & ARNOLD LLP

1 October 24, 2005. (ADMIN 184, 531). Dr. Kelley further opined, however, that Walker was able

2 to function in his own occupation subsequent to October 24, 2005. (ADMIN 184, 531).

3                    7.    MetLife Seeks Attending Physician Comments on Dr. Kelley's Report

4         As noted above, Dr. Kelley listed in her report five areas on which she desired

5 clarification from Dr. Chuang. (ADMIN 184). On April 27, 2006, a copy of Dr. Kelley's report

6 and questions were sent to Dr. Chuang for his response. (ADMIN 508, 529-34). MetLife

7 originally requested that Dr. Chuang respond within three weeks. (ADMIN 508). Walker called

8 MetLife on May 9, 2006, and said that he had further medical appointment on May 19, 2006,

9 asking that the time for Dr. Chuang's response be extended so as to include the results of that

10 appointment. (ADMIN 186). MetLife therefore extended the due date for Dr. Chuang to respond

11 until the end of May. (Id.). On May 9, Dr. Chuang responded to MetLife's request for additional

12 information and comments regarding Dr. Kelley's report, with a handwritten note that said, "I

13 agree with the plan for long term disability" but without answering the questions. (ADMIN 494.)

14         On May 9, 2006, Walker provided an authorization to release records of Group Health

15 Cooperative, with regard to his treatment in March and April 2006. (ADMIN 465-90.) Those

16 records reflected that on March 24, 2006, Walker saw Dr. Blum for a complaint of blurred

17 vision. (ADMIN 467.) The history he gave included information that he had very poor vision in

18 his right eye since childhood, and the record noted that the plan of treatment was referral to a

19 retinal specialist. (ADMIN 467-68.) The Group Health Cooperative records also reflected many

20 tests and included a list of the medications Walker was taking; notwithstanding Walker's lay

21 opinion that his medications were causing problems, no such diagnosis or opinion is reflected in

22 the records. (ADMIN 465-90.) Moreover, Dr. Chuang never replied to Dr. Kelley's questions or

23 commented on her report, beyond his May 9 note. (ADMIN 188.)

24 _____

25         5.    How is your patient's vision? Any decline in vision recently? Any treatment
26 planned?

27 (ADMIN 499.) The Administrative Record contains no response from Dr. Chuang to these
questions, although Dr. Kelley's report (including these questions) was sent to him with a request
28 for a response, on April 27, 2006. (ADMIN 508.)

1

### 8.   MetLife Credits Dr. Kelley's Opinion and Denies the Claim

2     On June 16, 2006, MetLife again reviewed Walker's complete file, including Dr. Kelley's

3   report, and credited Dr. Kelley's opinion. (ADMIN 188-89). Based upon this review, the Nurse

4   Consultant recommended a finding that Walker was unable to perform his occupation through

5   October 24, 2005, but was able to do so after that date. (ADMIN 492-93). In order to be eligible

6   to receive Plan benefits, Walker had to demonstrate that from the period from his last day of

7   work through February 17, 2006 (the elimination period), he was continuously unable to perform

8   his occupation. Because Walker was unable to perform his occupation only through October 24,

9   2005, he did not qualify for Plan benefits. (ADMIN 0492).

10     Walker was informed in writing on June 16, 2006, that his claim for Plan benefits had

11   been denied. (ADMIN 0492-93.) The letter also informed him of his appeal rights and the

12   appeal process. (*Id.* ) On June 19, 2006, MetLife spoke with Walker and explained that his

13   claim had been denied, and discussed with him his appeal rights. (ADMIN 189.)

14

### 9.   August 10, 2006 Notice of Appeal

15     On August 10, 2006, Walker's attorneys filed an appeal of the June 16, 2006, denial, and

16   requested a copy of his file. (ADMIN 0457.) They requested that the appeal not be decided until

17   they could review the file and submit additional evidence. (ADMIN 460.) MetLife complied

18   with the request for the claim file on August 23, 2006, and provided contact information for the

19   Plan administrator so that the attorneys could request Plan documents. (ADMIN 453.)

20

### 10.   Additional Medical Information submitted in August 2006

21     On August 21, 2006, one of Walker's doctors, S. Aggarwal, M.D., submitted additional

22   information about Walker's medical condition related to chronic low back pain due to arthritis,

23   and MetLife added this information to Walker's claim file. (ADMIN 189, 454-56.)

24

### 11.   December 12, 2006 Request for Extension to Submit Appeal Granted

25     On December 12, 2006, Walker's attorneys requested a 60-day extension of time to

26   submit additional documentation supporting Walker's appeal. (ADMIN 452.) On December 14,

27   2006, MetLife granted the 60-day extension. (ADMIN 451.)

**SEDGWICK** 28

DEFENDANTS' NOTICE AND MOTION FOR SUMMARY JUDGMENT AND MPA IN SUPPORT THEREOF

1          12.    Receipt of Social Security Disability Benefits

2          On September 30, 2006, the Social Security Administration awarded Walker disability

3    benefits of approximately $1,440.50 in monthly benefits, including a back payment award of

4    $8,984.00 on September 30, 2006 for the period beginning February 2006. (ADMIN 258.)

5          13.    February 8, 2007 Appeal Letter with Additional Documentation.

6          On February 8, 2007, Walker's attorneys submitted a formal appeal letter with 187 pages

7    of additional documents. (ADMIN 0261-447.) Included in the newly submitted records was a

8    letter from Jason Jones, M.D., dated May 23, 2006, reporting on his retinal exam of Walker.

9    (ADMIN 288-89.) In that letter, Dr. Jones reported to Dr. Blum, the referring physician, that

10   Walker gave a history indicating that he had been experiencing blurred vision in his left eye for

11   four months. Dr. Jones reported that Walker's vision at the May 19 examination was 5/200

12   (right eye) and 20/40 (left eye), that Dr. Jones had performed a laser procedure, and that he would

13   see Walker again in three months. (ADMIN 288.) The records submitted with the appeal also

14   included office notes showing that on examination by Dr. Jones on August 11, 2006, Walker's

15   vision had improved such that his left eye was 20/20, that is, normal. (ADMIN 294.)

16         The appeal letter contended that, in light of the further medical records provided, Walker

17   had remained disabled after October 2005, due to his diagnosed medical conditions and,

18   according to counsel's arguments, due to medications he was taking for those conditions.

19   (ADMIN 0261-0263). The symptoms claimed in the appeal letter included extreme fatigue and

20   shortness of breath, and allegedly severe vision impairment. (*Id.*) The side effects of medication

21   were said to explain Walker's complaints of fatigue, dizziness, lightheadedness, blurred vision,

22   nervousness, chest pain, confusion and headaches. (*Id*).

23         The appeal argued that Dr. Chuang had offered an opinion that Walker "remains 'very

24   limited" and he cannot 'sustain an 8 hour work day in any career given his symptoms." (ADMIN

25   262.) Importantly, however, there was no medical substantiation or explanation for Dr. Chuang's

26   conclusory assertion, beyond Walker's subjective assertions in support of his claim.

27         14.    MetLife's February 14, 2007, Record Review

28         On February 14, 2004, Walker's entire file, including the 187 pages submitted by his

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

SF/1465680v1                                              -10-                          CASE NO. C 07 3772 WHA

1   attorneys on February 8, 2007, was reviewed. (ADMIN 192-93.) The file then was referred out

2   for medical analysis by an internist who is Board-certified in cardiology for review of Walker's

3   cardiomyopathy, angina pectoris, congestive heart failure, hypertension, diabetes, and diabetic

4   neuropathy. (ADMIN 193.) The file also was referred for analysis by an ophthalmologist with

5   regard to Walker's glaucoma, macular degeneration, and nonproliferative diabetic retinopathy.

6   (*Id.*) Several questions were posed for each specialist. (ADMIN 193-194.)

7       15.    Review by Independent Board-Certified Cardiologist and Ophthalmologist

8       On February 21, 2007, Walker's entire file, including the supplemental records, was

9   referred for medical review. The file was assigned to Dr. Michael J. Rosenberg, an Independent

10  Physician Consultant ("IPC") who is Board-certified in cardiology and internal medicine, and

11  who is an Assistant Clinical Professor of Medicine at the University of Chicago, to opine upon

12  Walker's cardiomyopathy, angina pectoris, congestive heart failure, hypertension, diabetes, and

13  diabetic neuropathy. (ADMIN 243-246.) The file also was assigned to a second IPC, Dr. David

14  Turok, an Adjunct Clinical Professor who is Board-certified in ophthalmology and neurology, to

15  opine upon Walker's glaucoma, macular degeneration and nonproliferative diabetic retinopathy.

16  (ADMIN 247-250.)

17      Both IPCs were asked to discuss whether the medical information in the file supported

18  functional limitations from August 20, 2005, through the end of the elimination period, February

19  17, 2006, and specifically whether prescribed medications had caused a functional impairment or

20  safety risk. (ADMIN 194, 243-246; 247-250.) The IPCs were also asked to describe specific,

21  clinical findings and data noted in Walker's medical records that would support the conclusion

22  that he had such functional limitations. (ADMIN 193; 243-246; 247-250.)

23      MetLife asked that the cardiology review consider whether Walker's medical records

24  showed a left ventricular dysfunction and/or heart failure, cardiac arrhythmia and/or myocardial

25  ischemia, and, if so, whether that condition impairing him, and to identify any clinical findings or

26  diagnosis that would support impairment. (ADMIN 194).

27      MetLife asked that the ophthalmology review consider whether there was evidence of

**SEDGWICK** 28  loss of visual acuity or visual field, and whether there was increased intraocular pressure.

DEFENDANTS' NOTICE AND MOTION FOR SUMMARY JUDGMENT AND MPA IN SUPPORT THEREOF

1   (ADMIN 194).  If such conditions were found, the ophthalmologist was asked to opine as to

2   whether the condition was impairing and if so, to identify clinical findings that showed such

3   impairment.  (*Id.*)  The ophthalmology review was to address how Walker's vision was limited,

4   and what daily life activities were affected by any documented impairment. (ADMIN 194).

5                        16.    Dr. Rosenberg's Report

6           Dr. Rosenberg, who conducted the cardiology review, opined that the file showed that

7   Walker was obese, hypertensive, diabetic with neuropathy, and had mild restrictive pulmonary

8   defect. (ADMIN 243-246.)  He also opined Walker had hypertensive heart disease, but preserved

9   systolic function and had no meaningful evidence of coronary artery disease or myocardial

10  ischemia.  (*Id.*)  The records included a diagnosis of myocardial infarction, but the record and

11  previous cardiac catheterization did not support that diagnosis. (*Id.*)  Dr. Rosenberg opined that

12  Walker's pedal edema was a reflection of his venous insufficiency and vasodilating medication.

13  (*Id.* )  Dr. Rosenberg also noted that Walker's pulmonary examination revealed a mild restrictive

14  defect and opined that complaints of incapacitating shortness of breath were inconsistent with a

15  four-week vacation in Southeast Asia in the same period. (*Id.*)  Dr. Rosenberg opined Walker's

16  diabetes with end-organ involvement was being appropriately managed. (*Id.*)  Based upon his

17  review, Dr. Rosenberg opined that Walker was capable of medium level activities.  (*Id.*)

18                       17.    Dr. Turok's Report

19          Dr. Turok, an Adjunct Clinical Professor who performed the ophthalmology review,

20  opined that Walker's level of functionality was not restricted by blurred or monocular vision.

21  (ADMIN 247-250.)  Dr. Turok noted that Walker had always been monocular, and that

22  restrictions due to monocular vision should be considered (*e.g.*, working at unprotected heights

23  or around heavy machinery without protection).  (*Id.*)  Dr. Turok noted that many people who are

24  monocular may have difficulty driving, but that Walker had been monocular all his life and had

25  always driven despite that condition.  (*Id.*).  Dr. Turok reported that the first mention of vision

26  problems, other than monocular vision, was a complaint of blurred vision on an optometry visit

27

28

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

1    with Dr. Blum on March 24, 2006.[4] (*Id.*) Dr. Jason Jones on May 23, 2006, reported that Walker

2    had visual acuity of 20/40 in the left eye. (*Id.*) By August 2006, Walker's records showed that

3    his visual acuity was intact (20/20), and Dr. Turok found no other functional limitations. (*Id.*)

4    Dr. Turok reported that Walker was well controlled with his current medications, and found no

5    evidence of increased intraocular pressure while on glaucoma medication. (*Id.*)

6                18.     IPC Reports Sent to Attending Physicians with Questions

7         As it had done before the initial claim adjudication, on March 5, 2007, MetLife faxed the

8    reports of the IPCs to Walker's physicians, Dr. Chuang and Dr. Jones. (ADMIN 196; 240-41.)

9    On March 9, 2007, Walker's counsel requested additional time for Dr. Chuang and Dr. Jones to

10   review and reply to the IPCs' reports. (ADMIN 197.) MetLife granted an extension of time to

11   April 18, 2007 (ADMIN 239.) MetLife also extended the time to decide on Walker's appeal to

12   May 18, 2007, so that Dr. Chuang could respond first and his response could be incorporated into

13   the decision. (ADMIN 197-198.) On April 11, 2007, Dr. Chuang responded with a letter

14   addressed to MetLife, which was forwarded to MetLife with an additional letter and legal

15   positions from Walker's attorneys. (ADMIN 235-238.)

16                19.     Dr. Chuang's Reply Regarding IPC Reports

17         Dr. Chuang's April 11 letter was forwarded to Dr. Rosenberg by MetLife. (ADMIN 227-

18   228). The April 11 letter made only conclusory statements about Walker's condition,[5] and added

19   no further medical data. (ADMIN 238.) Importantly, Dr. Chuang did not directly contradict the

20   IPCs' reports and opinions, but only said that he "strongly advise[d]" that they "reconsider

21   [Walker's] claim to disability." (*Id.*) On April 27 and April 30, 2007, Dr. Rosenberg called Dr.

22

23         [4] Dr. Turok did not comment on Walker's September 15, 2005, report of episodes of blurred
vision, noted above, which resolved to 20/25 visual acuity by September 21, nor did he comment
24   on Dr. Chuang's office notes that on October 11, 2005, Walker's vision was stable. (ADMIN
     543, 560, 562.)
25

26         [5] For instance, Dr. Chuang's entire response to the questions posed originally by Dr. Kelley
regarding Walker's claimed vision issues was, "[Walker's] ophthalmologic involvement
     (diabetic retinopathy) from his diabetes is problematic for him to function normally. His
27   retinopathy will only get worse." (ADMIN 238.) These vague statements shed no light on the
**SEDGWICK** 28   actual degree of Walker's functional impairment from the occupation of LAN administrator.

1  Chuang in an attempt to discuss with him Walker's medical condition and the report, leaving
2  four messages to which Dr. Chuang did not respond. (ADMIN 227-228.) Dr. Rosenberg
3  provided a supplemental report to MetLife after receipt of Dr. Chuang's April 11 letter, noting
4  that nothing in the letter really addressed the issues and stating that the letter did not alter his
5  opinion that Walker was not incapacitated from performing medium work. (*Id.*)

6           20.     MetLife's Further Questions to IPCs in June 2007

7           MetLife also submitted further questions to the IPCs on June 5, 2007, in response to the
8  appeal letter's argument that it was the combination of Walker's medications that allegedly
9  caused him to be disabled from working as a LAN administrator.[6] (ADMIN 218-221).

10          MetLife asked Dr. Rosenberg to opine as to whether Walker's current medications for his
11 mildly restrictive pulmonary defect caused functional impairment. (ADMIN 220-21). Dr.
12 Rosenberg opined that they did not. (*Id*). MetLife also asked Dr. Turok to consider whether
13 Walker's medications caused functional impairment. (ADMIN 218-219) Dr. Turok responded
14 that they did not. (*Id.*)

15          21.     MetLife's Denial of Walker's Appeal

16          On June 15, 2007, MetLife further reviewed Walker's entire claim file and credited the
17 additional opinions and information provided by Drs. Rosenberg and Turok, noting that Dr.
18 Chuang had not responded to questions or expressed disagreement with any specific opinions of
19 the IPC reports. (ADMIN 202-204). Upon review, MetLife determined that Walker was capable
20 of performing his own job and that the medical documentation did not support that he was
21 disabled under the Plan. (ADMIN 204). On June 18, 2007, MetLife informed Walker that it had
22 denied his appeal, and articulated the scope and results of its appeal review. (ADMIN 213).

23
24
25

26          [6] This argument is not supported by medical evidence, but only by the lay opinions of Walker
27 and his attorneys. Most notably, although Dr. Chuang, the treating physician, wrote to MetLife
    in support of the claim on April 11, 2006, he did <u>not</u> adopt the argument that medications Walker
28 was taking caused functional impairment disabling him from his occupation. (*See* ADMIN 238.)

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

**III.    ARGUMENT**

**A.    Under *Abatie*, the Decision Is Entitled to a High Degree of Deference**

1.    Abuse of Discretion Review Applies

Defendants understand that Walker will contend that the denial of his claim should be reviewed *de novo*. He is incorrect. The Plan confers discretionary authority on the claim administrator, MetLife, to construe the terms of the Plan and to make the benefits determination at issue in this action. (ADMIN 0007-0010) Where, as here, a plan expressly confers discretionary authority, the standard of review is abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

In *Abatie v. Alta Health & Life Ins. Co.*, 458 F. 3d 955 (9th Cir. 2006), the Ninth Circuit rejected prior case law which had shifted the standard of review to *de novo* when a plaintiff presented evidence that the administrator had a serious conflict of interest. "*Firestone* appears to provide only two alternatives. When a plan confers discretion, abuse of discretion review applies; when it does not, de novo review applies." *Id.* at 965. "Abuse of discretion review applies to a discretion-granting plan even if the administrator has a conflict of interest." *Id.*

*Abatie* recognized one exception, holding that "when a plan administrator's actions fall so far outside the strictures of ERISA that it cannot be said that the administrator exercised the discretion that ERISA and the ERISA plan grant, no deference is warranted." *Id.* at 972; *see also id.* at 971 (requiring "wholesale and flagrant violations of the procedural requirements of ERISA" and actions in "utter disregard of the underlying purpose of the plan" to shift the standard of review to *de novo*). However, *Abatie* also holds that the standard of review would shift to *de novo* only in a "rare class of cases" and not in "the more ordinary situation in which a plan administrator has exercised discretion but, in doing so, has made procedural errors." *Id.*

Here, it cannot be disputed that the Plan conferred discretionary authority on MetLife [*see* ADMIN 0007], and nothing in the record suggests that there were any violations (much less "wholesale" or "flagrant" violations) of the procedural requirements of ERISA. The Plan provided Walker numerous opportunities to present evidence to support his claim, advised him of his rights and the reasons for its decisions, made multiple attempts to discuss the IPCs'

SEDGWICK
DETERT, MORAN & ARNOLD LLP

1    opinions with his treating doctor, and obtained medical reviews by independent Board-certified
2    physicians in appropriate specialties.

3        Walker had legal representation from the inception of his appeal and throughout the
4    appeal process, and MetLife granted his attorneys numerous extensions of time to submit
5    supplemental medical information, which was fully considered in deciding the appeal. In light of
6    the Plan language and the manner in which the claim was handled, the appropriate standard of
7    review is abuse of discretion.

8        2.    The Determination Should Be Afforded a High Degree of Deference

9        *Abatie* holds that the Court has discretion to determine how much deference to afford the
10   Plan's determination. "A district court, when faced with all the facts and circumstances, must
11   decide in each case how much or how little to credit the plan administrator's reason for denying
12   insurance coverage." *Id.* at 968. Here, the Court should afford the decision to deny the claim a
13   high degree of deference to the determination for several reasons.

14       First, although MetLife both issued the policy of insurance that funded the benefits at
15   issue and also made the benefit determination, the procedure and manner in which the claim was
16   handled belie arguments of improper motivation. The claim was administered in compliance
17   with ERISA regulations, and Walker was afforded a full and fair review of the decisions (and his
18   attorneys never contended otherwise). Walker was afforded many opportunities to submit
19   additional medical evidence (and did so) and was provided numerous extensions of time to
20   provide further medical evidence, and the reviews of his claim addressed all evidence submitted.

21       MetLife, as the Plan's claim administrator, was entitled to credit the opinions of the
22   Board-certified cardiologist, ophthalmologist and internist who reviewed the full medical records
23   and opined that Walker's various medical issues did not so limit his functionality as to preclude
24   performing his occupation. While Walker was functionally impaired during part of the
25   elimination period (August 21, 2005, to October 24, 2005), his medical condition after October
26   24, 2005, did not impair him from performing his occupation.

27       Defendants anticipate that Walker will contend that MetLife's determination should not
28   be afforded much deference, for the unremarkable reason that the three Board-certified

**SEDGWICK**
DETERT, MORAN & ARNOLD LLP

DEFENDANTS' NOTICE AND MOTION FOR SUMMARY JUDGMENT AND MPA IN SUPPORT THEREOF

1    physicians who reviewed his medical record were compensated for their services. ERISA

2    regulations, however, *require that a plan obtain such reviews*. *See* 29 C.F.R. § 2560-503-

3    1(h)(3)(iii), (4). It is axiomatic that physicians who perform medical reviews will be

4    compensated for their services. Tellingly, the opinions of all the IPCs are largely consistent with

5    those in the contemporaneous records of Walker's own physicians, Drs. Chuang and Jones. The

6    fact that the IPCs were compensated (just as Drs. Chuang and Jones were compensated for their

7    services) is not a logical basis for affording less deference to MetLife's determination. The

8    denial should be afforded a high degree of deference under all of the circumstances.

9    **B.    Walker Was Not Disabled Under the Plan from Performing His Occupation**

10    1.    Walker Failed to Establish Functional Impairment

11    It is undisputed that Walker had medical issues. However, the bare fact that a Plan

12    participant has developed one or more health issues does not establish eligibility for LTD

13    benefits under the Plan. The medical records regarding Walker failed to show that Walker was

14    functionally impaired from performing his own occupation throughout and after the elimination

15    period. As a result, he did not meet the Plan's definition of disability and was not eligible for

16    benefits. The fact that the IPCs and treating doctors found him to be disabled between August

17    21, 2005 (Walker's last day on the job) and October 24, 2005, changes nothing, because he did

18    not remain disabled between October 24, 2005, and the end of the 180-day elimination period.

19    Although Walker and his attending physicians argued that he was disabled, such

20    statements had little probative value and MetLife was not required to credit them, in light of the

21    IPCs' assessment that Walker was not impaired from the duties of his occupation. For instance,

22    in *Bratton v. Metropolitan Life Inc. Co*, 439 F. Supp.2d 1039 (C.D. Cal. 2006), like here,

23    "Bratton's own doctors were equivocal as to whether Bratton's condition prevented him form

24    performing a sedentary occupation." *Id*. at 1053. Denial of benefits in those circumstances is not

25    an abuse of discretion. *Id*. at 1054. Here, Dr. Chuang initially expressed apparent agreement

26    with Dr. Kelley's report (certainly, he expressed no disagreement with any part of it at the time,

27    and did not answer the questions addressed to him). Similarly, Dr. Chuang did not directly

28    contradict Dr. Rosenberg's or Dr. Turok's opinions, or respond to further questions put to him,

**SEDGWICK**
DETERT, MORAN & ARNOLD.LLP

1   but merely said, without explanation, that he "strongly advised" that they reconsider their views.

2       Defendants assume that Walker will argue that MetLife was not entitled to require

3   anything beyond his subjective statement that he could not perform his occupation, and that

4   asking for objective medical evidence of impairment was improper. Such an argument would be

5   incorrect. For instance, as the court in *Bratton*, *supra*, reasoned:

6       [H]ere MetLife required objective proof that Bratton could not substantially
        perform his occupation, not proof of his illness. The Court does not find this an
7       unreasonable or arbitrary interpretation of the Plan's requirement. . . . The Court
        finds MetLife's denial of benefits and findings that the information provided does
8       not support "the restrictions and limitations which would prevent you from
        performing the duties of a sedentary occupation" . . . is neither arbitrary nor
9       capricious.

10
    *Id*. at 1052-53 (citation omitted), relying on *Jordan v Northrop Grumman Corp Welfare Benefit*
11
    *Plan*, 63 F. Supp. 2d 1145 (C.D. Cal. 1999), *aff'd*, 370 F. 3d 869 (9th Cir. 2004) (*see Bratton*,
12
    439 F. Supp.2d at 1049-50). The Ninth Circuit in *Jordan* held that it was proper for a plan to
13
    reject a conclusory statement by a plaintiff's physician to the effect that she was totally disabled,
14
    given that the actual medical evidence did not show that her medical condition functionally
15
    impaired her from working. In so holding, the Ninth Circuit observed, "Jordan's evidence that
16
    she was disabled was slight, and its reliability was questionable. . . . Jordan asks us to accept a
17
    more conclusory remark without any explanation is much more easily characterized as arbitrary
18
    than what the administrator did." *Jordan*, 370 F. 3d at 882.
19
        Here, the Plan contains a similar definition of total disability to the plan in *Bratton*,
20
    requiring evidence that a claimant is unable to perform the important duties of his occupation.
21
    (ADMIN 108.) Here, as in *Bratton*, Walker's own doctor, Dr. Chuang, was equivocal about his
22
    ability to perform his job and the medical explanation for any claimed inability to do so.
23
    (ADMIN 238, 264-66, 271-272, 288-89, 308-11.) Although Walker's doctors supported his
24
    claim with conclusory assertions that he was disabled from his occupation, as did the doctors in
25
    *Jordan*, the actual records belied that argument. As in *Bratton* and *Jordan*, summary judgment
26
    upholding the denial of benefits is warranted here, because Walker failed to establish that he was
27
    functionally impaired from performing his occupation, which was his burden. *See Jordan v*

SEDGWICK  28

DEFENDANTS' NOTICE AND MOTION FOR SUMMARY JUDGMENT AND MPA IN SUPPORT THEREOF

1  *Northrop Grumman Corp Welfare Benefit Plan*, 63 F. Supp. 2d at 1157. *See also Martin v.*

2  *Continental Casualty Co.,* 96 F.Supp.2d 983, 994 (N.D. Cal. 2000) (summary judgment for

3  defendant: "Martin has admitted that he is capable of a range of activities encompassing his

4  sedentary job; the fact that those activities cause him subjective (or even medically objective)

5  pain does not bring it to the level of a disability").

6  MetLife and the Plan were entitled to credit the opinions of the board certified IPCs rather

7  than conclusory assertions of Walker's doctors. As discussed in *Semien v. Life Ins. Co. of North*

8  *America,* 436 F. 3d 805 (7th Cir. 2006):

9  The reports by the physicians LINA hired to review Semien's claim demonstrate a
   thorough consideration of the available information. These physicians found
10 Semien capable of activities that would disqualify her from long-term disability
   coverage. Although Semien's treating physicians reached different conclusions as
11 to her abilities, under an arbitrary and capricious review, neither this Court, nor
   the district court, will attempt to make a determination between competing expert
12 opinions. Instead, an "insurer's decision prevails if it has rational support in the
13 record."

14 *Id*. at 812 (quoting *Leipzig v. AIG Life Ins. Co*., 362 F. 3d 406, 409 (7th Cir. 2004)). Similarly,

15 here, Walker provided a statement that he spent hours on his computer at home during the time

16 he was off work, walked for an hour a day, did chores around the house, and engaged in other

17 activities such as yard work. (ADMIN 303, 312-15.)

18           2.      MetLife Was Entitled to Credit the IPCs' Opinions

19 Defendants expect that Walker will contend that the Plan was required to accept

20 statements his physicians offered in support of his claim, and was not permitted to credit reports

21 of multiple Board-certified physicians, including internal medicine, cardiology and

22 ophthalmology specialists. Such arguments are contrary to Supreme Court authority: "We hold

23 that plan administrators are not obligated to accord special deference to the opinions of treating

24 physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003).

25 [C]ourts have no warrant to require administrators automatically to accord special
   weight to the opinions of a claimant's physician; nor may courts impose on plan
26 administrators a discrete burden of explanation when they credit reliable evidence
27 that conflicts with a treating physician's evaluation.

**SEDGWICK** 28 *Id*. at 834. Similarly, *Hunt v. Metropolitan Life Ins. Co.*, 425 F. 3d 489 (8th Cir. 2005) upheld

1  summary judgment in favor of MetLife where LTD benefits were denied based on two physician

2  medical reviews that contradicted the conclusions of the plaintiff's treating doctor. *Hunt*

3  recognized that the treating physician had said that plaintiff was disabled, but held that MetLife

4  "was nevertheless entitled to rely on the opinions of two reviewing physicians who gave contrary

5  opinions" and "did not abuse its discretion in denying Hunt LTD benefits." *Id.* at 490-91.

6  Here, the medical evidence submitted by Walker and his physicians was reviewed by

7  three independent, Board-certified physicians. Walker's claim file, including documentation

8  submitted by Dr. Chuang, was initially reviewed by Dr. Kelley. On the basis of the information

9  contained in the file, she opined that Walker could "function in his own occupation beyond

10 [October 24, 2005]." (ADMIN 499.) MetLife forwarded Dr. Kelley's report and conclusions to

11 Dr. Chuang for comment and follow-up, and to answer questions. (ADMIN 496.) Dr. Chuang

12 responded that he agreed with the report, and did not answer the questions. (ADMIN 492.)

13 On appeal, Walker's file was supplemented with further medical information submitted

14 by his attorneys. Drs. Rosenberg and Turok opined that his various medical conditions were not

15 of a degree such as to preclude him from performing the duties of a LAN Administrator. As in

16 *Hunt*, MetLife was entitled to credit the medical opinions of Drs. Kelley, Rosenberg and Turok.

17 MetLife did not abuse its discretion in crediting the opinions of the independent physician

18 consultants, and its claim determination should be upheld by the Court.

19         3.     The Social Security Administration Decision Is not Determinative

20 Walker may argue that his receipt of Social Security disability benefits entitles him to

21 LTD benefits under the Plan. The Supreme Court, however, has held that the fact that Social

22 Security disability benefits have been awarded is not determinative of ERISA plan benefits,

23 because rules and standards set forth in the Social Security Act and interpreting case law – and in

24 particular the "treating physician rule," under which the opinion of a Social Security applicant's

25 physician is controlling – are unique to Social Security Act claims.

26         In contrast to the obligatory, nationwide Social Security program, "[n]othing in
           ERISA requires employers to establish employee benefits plans. Nor does ERISA
27         mandate what kind of benefits employers must provide if they choose to have
           such a plan." . . . Rather, employers have large leeway to design disability and
28         other welfare plans as they see fit. In determining entitlement to Social Security

**SEDGWICK**
DETERT, MORAN & ARNOLDLLP

SF/1465680v1

1  benefits, the adjudicator measures the claimant's condition against a uniform set of federal criteria. "[T]he validity of a claim to benefits under an ERISA plan," on the other hand, "is likely to turn," in large part, "on the interpretation of terms in the plan at issue." . . . It is the Secretary of Labor's view that ERISA is best served by "preserv[ing] the greatest flexibility possible for . . . operating claims processing systems consistent with the prudent administration of a plan."

5  *Nord*, *supra*, 538 U.S. at 833 [citations omitted]; *see also Madden v. ITT Long Term Disability*

6  *Plan*, 914 F.2d 1279, 1285 (9th Cir. 1990) (ERISA benefit decisions are not required to track or

7  conform to Social Security decisions). Unlike the Social Security Administration, the Plan was

8  not required to grant benefits merely because Walker's physician was willing to conclusorily

9  assert that Walker was "disabled."

10  **IV.    CONCLUSION**

11  The medical records submitted by Walker did not establish that he could not work as a

12  LAN administrator. Therefore, he was not entitled to LTD benefits when he made his claim.

13  On the evidence before the Court, the denial of Walker's claim was not an abuse of

14  discretion. Therefore, defendants request that the Court grant their motion for summary

15  judgment and enter judgment in their favor.

16  Dated: January 10, 2007            SEDGWICK, DETERT, MORAN & ARNOLD LLP

17

18                                     By  /s/ Rebecca A. Hull
19                                             Rebecca A. Hull

20                                     Attorneys for Defendants

DEFENDANTS' NOTICE AND MOTION FOR SUMMARY JUDGMENT AND MPA IN SUPPORT THEREOF