1   Lisa S. Kantor, Esq. - State Bar No. 110678
      Email: lkantor@kantorlaw.net
2   Elizabeth K. Green, Esq. - State Bar No. 199634
      Email: egreen@kantorlaw.net
3   KANTOR & KANTOR, LLP
    19839 Nordhoff Street
4   Northridge, CA 91324
    (818) 886-2525 (TEL)
5   (818) 350-6272  (FAX)

6   Attorneys for Plaintiff,
    DAVID WALKER
7

8

9                    UNITED STATES DISTRICT COURT

10          NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO

11

12  DAVID WALKER,                      )   CASE NO: C 07-3772 WHA
                                       )
13            Plaintiff,               )   DECLARATION OF ELIZABETH K. GREEN
                                       )   IN SUPPORT OF PLAINTIFF'S OPPOSITION
14      VS.                            )   TO DEFENDANTS' MOTION FOR
                                       )   SUMMARY JUDGMENT
15  METROPOLITAN LIFE INSURANCE        )
    COMPANY; KAISER PERMANENTE         )   [Concurrently Filed with Plaintiff's Opposition to
16  FLEXIBLE BENEFITS PLAN, and DOES 1 )   Defendants' Motion for Summary Judgment]
    THROUGH 10, INCLUSIVE,             )
17                                     )   Date:        February 14, 2008
              Defendants.              )   Time:        3:00 p.m.
18                                     )   Courtroom:   9
    _____ )   Judge:       Honorable William Alsup
19

20

21

22

23

24

25

26

27

28

1

**Declaration of Elizabeth K. Green**

2      I, Elizabeth K. Green, hereby declare as follows:

3      1.    I am an attorney duly licensed to practice law in all courts in the State of California. I

4 am attorney for record for the Plaintiff, David Walker. I know the following facts of my own

5 knowledge and, if called as a witness, I could and would testify competently to the following.

6      2.    Attached as Exhibit "A" is a true and correct copy of pages from the website of Dr.

7 David Turok found at http://www.drturok.com/. The pages include the welcome page and the

8 "About Us" tab which provides a biography of Dr. Turok.

9      3.    Attached as Exhibit "B" are a true and correct copy of documents produced to

10 Defendant as part of Plaintiff's Initial Disclosures. The documents pertain to Network Medical

11 Review Company ("NMR") and reveal the past amounts that NMR has been paid by MetLife for

12 medical reviews and other information concerning MetLife and NMR's relationship.

13     4.    Plaintiff is entitled to discovery regarding whether discretion was properly granted to

14 MetLife by the welfare benefit plan, potential bias of NMR and the reviewing physicians, the extent

15 of MetLife's conflict of interest regarding it medical reviews and reliance on the opinion of Dr.

16 Turok, a practicing cosmetic surgeon, for an ophthalmology medical review. Plaintiff seeks to serve

17 written discovery to MetLife, a subpoena for documents to NMR and Dr. Rosenberg and Turok and

18 possibly depositions of key individuals.

19     I declare under penalty of perjury that the foregoing is true and correct.

20     Executed this 24th day of January, 2008 at Northridge, California.

21

22                                            /s/ Elizabeth K. Green

23                                         Elizabeth K. Green

24

25

26

27

28

Case No. C 07-3772 WHA                   2
DECLARATION OF ELIZABETH K. GREEN IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT



EXHIBIT A

3

Declaration of Elizabeth K. Green



# David Turok, M.D.

912 Northwest Highway Suite 102 | Fox River Grove, IL 60021 | PH: 847.516.9061 | FX: 847.516.9071

- Home
- About Us
- Testimonials
- Procedures
- Before & After
- Videos
- FAQs
- Contact

## About Us

| The Surgeon | Mission Statement |

### David Turok M.D. - Cosmetic Surgeon

Dr. David Turok is a Cosmetic Surgeon who is fellowship trained in cosmetic and reconstructive Oculo Facial plastic surgery. He is board certified in both Ophthalmology as well as Neurology.

Dr. Turok is a graduate of the Honors six-year Accelerated B.S.-M.D. program at the Rensselaer Polytechnic Institute and the Albany Medical College of Union University, having graduated with both a B.S. in Biology and M.D. degrees. He then completed full residencies in Neurology and Ophthalmology and is board certified in both fields. It was during his Neurology residency that Dr. Turok first started using Botox™ for reconstructive purposes over 20 years ago.

Having completed fellowships in Cosmetic and Reconstructive Oculo Facial plastic surgery at Childs Hospital in Albany New York, and in Clinical and Research Neuro-pathology at the Albany Veterans Administration Medical Center, Dr. Turok has completed extensive post graduate training in cosmetic and laser surgery.

Dr. Turok has always had a strong interest in the use of lasers in medicine and is member of numerous laser medicine and surgery societies. Dr. Turok was the first physician in the state of Alabama to perform Ultrapulse CO2 laser resurfacing in the early nineties.

As an oculofacial plastic surgeon, Dr. Turok has long harvested fat from various locations to use in facial reconstructive and cosmetic procedures. He found that he

(c) 2007 David Turok M.D. A site by: Creative Visions

912 Northwest Highway Suite 102 | Fox River Grove, IL 60021 | PH: 847.516.9061 | FX: 847.516.9071

4

Declaration of Elizabeth K. Green



# David Turok, M.D.

912 Northwest Highway Suite 102 | Fox River Grove, IL 60021 | PH: 847.516.9061 | FX: 847.516.9071

- Home
- About Us
- Testimonials
- Procedures
- Before & After
- Videos
- FAQs
- Contact

## About Us

| The Surgeon | Mission Statement |

As an oculofacial plastic surgeon, Dr. Turok has long harvested fat from various locations to use in facial reconstructive and cosmetic procedures. He found that he had a natural affinity for the liposuction portion of those procedures and pursued extensive post graduate education in tumescent liposuction, training with the pioneers of this technique.

Although Dr. Turok has been performing tumescent liposuction since 1995 and has experience with numerous advanced techniques such as internal and external ultrasonic liposuction, and power assisted liposuction it was not until this year that Dr. Turok found a significant advance that improved the results of tumescent liposuction - *SmartLipo*™. Dr. Turok was one of the first surgeons in the country to perform SmartLipo treatments in January of this year following FDA approval and his OR is a designated SmartLipo training center.

Dr. Turok is expert in small incision minimally invasive facial surgery which reduces down time. He performs no stitch lower eyelid surgery without a visible scar and minimal incision endoscopic browlift and facelift surgery.

As medical director of Quasar Medical a cosmetic laser rental and sales company Dr. Turok has instructed many cosmetic surgeons, dermatologists and plastic surgeons in the use of numerous lasers for treatment of aging changes, veins, wrinkles, tattoo removal and hair removal as well as Botox and Restylane.

He is a member of the American Academy of Cosmetic Surgery/American Society of Liposuction Surgery, International Society of Cosmetic Laser Surgeons and the American Society of Laser Medicine and Surgery among numerous other medical

(c) 2007 David Turok M.D.

A site by: Creative Visions

912 Northwest Highway Suite 102 | Fox River Grove, IL 60021 | PH: 847.516.9061 | FX: 847.516.9071

Declaration of Elizabeth K. Green

# KANTOR & KANTOR, LLP
## ATTORNEYS AT LAW

19839 NORDHOFF STREET
NORTHRIDGE, CA 91324
TEL: (818) 886-2525
FAX: (818) 350-6272

December 5, 2007

Christopher Keller
One Market Plaza
Steuart Tower, 8th Floor
San Francisco, California 94105

Re:   *Walker v. MetLife*
      Case No. C 07-3772 WHA

Dear Mr. Walker:

I am enclosing documents bates numbered 001-0023 as part of Plaintiff's Initial Disclosures.

Please contact me if you have any questions.

Very truly yours,

KANTOR & KANTOR LLP

Elizabeth K. Green

Enclosures

# EXHIBIT B

Declaration of Elizabeth K. Green

1  John S. Cha, Esq., SBN 129115
       jcha@srclaw.com
2  STONE | ROSENBLATT | CHA, PLC
   A Professional Law Corporation
3  21550 Oxnard Street, Main Plaza - Suite 200
   Woodland Hills, California 91367
4  Tel: (818) 999-2232
   Fax: (818) 999-2269
5
   Attorneys for Subpoenaed Third-Parties
6  Joseph J. Jares, III, M.D., Reginald Givens, M.D., Katherine
   Duvall, M.D., Network Medical Review Company, Ltd., and Elite Physicians, Ltd.
7
8               UNITED STATES DISTRICT COURT
9               CENTRAL DISTRICT OF CALIFORNIA
10
11  SANDRA FROST,                    )  Case No.  CV05-2486 JFW (SSx)
                                     )
12          Plaintiff,               )
                                     )  DECLARATION OF ROBERT C.
13     v.                            )  PORTER, M.D.
                                     )
14  METROPOLITAN LIFE                )
    INSURANCE COMPANY; THE           )
15  WELLS FARGO & COMPANY            )
    LONG TERM DISABILITY PLAN,       )
16                                   )
          Defendants.               )
17  _____)
18
19            *Declaration of Robert C. Porter*
20     I, Robert C. Porter, declare and state the following is true and accurate to the
21  best of my knowledge:
22     1.    Network Medical Review Company, Ltd. (NMR), is a corporation
23  organized in 1994 and existing under the laws of the State of Illinois.  NMR changed
24  its name to Elite Physicians, Ltd. (Elite), on March 21, 2002.  I am the President and
25  Chief Executive Officer of Elite and am authorized to make this declaration.
26     2.    From 2002 to the present, NMR/Elite have had a business relationship
27  with Metropolitan Life Insurance Company (MetLife) whereby MetLife engaged the
28  ///

Case No. CV05-2486 JFW (SSx)                          Declaration of Dr. Robert Porter

7                                    Walker 001
Declaration of Elizabeth K. Green

1  services of NMR/Elite to obtain independent medical opinions on the medical
2  conditions of individuals seeking benefits under MetLife disability insurance policies.
3      3.    I have personally reviewed the records of NMR/Elite, including all
4  relevant accounting and tax related documents concerning income paid to NMR/Elite
5  by MetLife in 2002 through 2005, as well as the fees paid to the three physicians
6  utilized by NMR/Elite to conduct the independent medical reviews in 2002 through
7  2005, and, in order to avoid the expense and burden of having to produce voluminous
8  documents, I have accurately summarized the information contained in those
9  documents and provide that information below in response to Ms. Frost's request for
10  documents:

11      All documents relating or referring to how much money NMR and Elite
12      received from MetLife in 2002, 2003, 2004, and 2005.
13          2002: $236,490;
14          2003: $569,795;
15          2004: $838,265; and
16          2005: $1,671,605
17      All documents relating to how many independent physician consultant
18      reviews NMR and Elite caused, arranged, or directed to be prepared for
19      or at the request of MetLife in 2002 through 2005.
20          2002: 370;
21          2003: 850;
22          2004: 1,091; and
23          2005: 1,977
24      All documents relating to what percentage of NMR's and Elite's gross
25      income was derived from payments to NMR and Elite by MetLife during
26      2002 to 2005.
27          2002: 5.09%;
28          2003: 9.87%;

2

Case No. CV05-2486 JFW (SSx)        Declaration of Dr. Robert Porter

1    2004: 11.57%; and

2    2005: 25.62%.

3    As to the three individual physicians who performed independent

4    medical reviews (for both MetLife and others), they provided the

5    following number of cases overall (first number) and for MetLife

6    (second number) and were paid the following amounts for 2002 to 2005

7    as to those MetLife cases.

8    <u>Dr. Duvall:</u>

9    2002 - overall: 19 cases and 10 cases for MetLife -- paid $1,500

10   2003 - overall: 83 cases and 7 cases for MetLife -- paid $1,050

11   2004 - overall: 210 cases and 14 cases for MetLife -- paid $2,100

12   2005 - overall: 828 cases and 2 cases for MetLife -- $300

13   <u>Dr. Jares:</u>

14   2002 - overall: 321 cases and 88 cases for MetLife -- paid $13,200

15   2003 - overall: 479 cases and 160 cases for MetLife -- paid $24,000

16   2004 - overall: 603 cases and 180 cases for MetLife -- paid $27,000

17   2005 - overall: 936 cases and 247 cases for MetLife -- paid $37,050

18   <u>Dr. Givens:</u>

19   2002 - overall: 152 cases and 13 cases for MetLife -- paid $1,625

20   2003 - overall: 212 cases and 35 cases for MetLife -- paid $4,375

21   2004 - overall: 231 cases and 66 cases for MetLife -- paid $8,250

22   2005 - overall: 753 cases and 62 cases for MetLife -- paid $7,750

23   I, Robert C. Porter, M.D., declare under penalty of perjury under the laws of the

24   United States that the foregoing is true and correct to the best of my knowledge.

25   Executed on March 7, 2006, in Rockford, Illinois.

26

27   _____

       Robert C. Porter, M.D.

28

3

STONE | ROSENBLATT | CHA
A PROFESSIONAL LAW CORPORATION
16633 VENTURA BOULEVARD, SUITE 1401
ENCINO, CALIFORNIA 91436

1  Submitted by:

2  Dated: March **20** 2006

    STONE | ROSENBLATT | CHA
    A Professional Law Corporation



    By:_____
       John S. Cha
       Attorneys for Subpoenaed Third-Parties

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STONE | ROSENBLATT | CHA
A PROFESSIONAL LAW CORPORATION
16633 VENTURA BOULEVARD, SUITE 1401
ENCINO, CALIFORNIA 91436

4

Case No. CV05-2486 JFW (SSx)

Declaration of Dr. Robert Porter

UNITED STATES DISTRICT COURTSOUTHERN DISTRICT OF TEXAS
(GALVESTON DIVISION)

| | |
|---|---|
| CHERYL JEZ, <br><br> Plaintiff <br><br> v. <br><br> DOW CHEMICAL COMPANY, INC, LONG TERM DISABILITY PLAN, METROPOLITAN LIFE INSURANCE COMPANY <br><br> Defendants | Civil Action No, G-04-453 |

## DECLARATION OF BLAIR BRININGER, ESQUIRE
## VERIFYING THE ATTACHED DOCUMENT FROM DR. ROBERT PORTER OF
## NETWORK MEDICAL REVIEW

I, Blair Brininger, hereby on oath depose and state as follows:

1.    I am an attorney duly authorized and admitted to the practice of law in the courts of the State of Texas and before the United States District Court for the Southern District of Texas.

2.    I am counsel of record for the Plaintiff in this action.

3.    The purpose of this declaration is to verify the authenticity of document that are attached to this declaration that was received at my office.

4.    Attached as EXHIBIT A to this declaration is a true copy of a letter ("Letter") that was received at my office from Dr. Robert Porter of Network Medical Review, that was delivered to me in connection with a third party discovery that was allowed by an order of this Court.

5.    This Court ordered Dr. Robert Porter of Network Medical Review ("NMR") to disclose the number of times Metropolitan Life Insurance Company had retained NMR during 2003, and to disclose additional information relating to its relationship with Metropolitan Life Insurance Company.

6.    Attached as EXHIBIT B to this declaration is a true copy of a contract between NMR and Metropolitan Life Insurance Company ("Contract") that was delivered to me in connection with a third party discovery that was allowed by an order of this Court.

7.    The Letter was received via email on July 8, 2005 and the Contract was received by fax on July 11, 2005. Exhibits B and C to the contract were received by fax on July 12, 2005.

Pursuant to 28 U.S.C. section 1746, I, verify under the penalty of perjury under the Laws of the United States that the foregoing is true and correct.

Executed this ___12___ day of July 2005.

Blair Brininger

JUL-11-2005  11:02      UNITED-WOMACK LEGAL               713  4250600   P.02/13



*tte Physicians®, Ltd.*

*A Subsidiary of*
**NMI**

*Providers of*
*Evidence-Based*
*Medical Reports*

July 8, 2005

Dear Karen,

To the best of our knowledge, review of our records indicates that NMR provided the following number of evaluations to MetLife in years requested:

2001    -128
2002    -370
2003    -850

Revenues for years were:

2001    -$73,280
2002    -$236,490
2003    -$569,795

The number of cases reviewed by physician requested:

    29

Total fees paid to physician.

    2004    -$4350

We have not been able to locate the contract with MetLife for period in question. I believe we will be able to provide Monday.

If you have any other questions, please feel free to contact me directly.

Sincerely,

Robert C. Porter, M.D.
President and C.E.O.
Network Medical Review Company, Ltd

*5713 Mill Road*
*Rockford, Illinois 61108*

*Phone  815-391-8180*
*Fax  815-391-5437*

*E-Mail*
*info@allnphysicians.com*

*Visit our website*
*www.llmrco.com*

JUL-11-2005  11:02        UNITED-WLMACK LEGAL.                713  4260600   P.03/13

## PHYSICIAN FILE REVIEW SERVICES AGREEMENT

This Physician File Review Services Agreement ("Agreement") made as of this _1st_ day of _October_, 19_97_ by and between Metropolitan Life Insurance Company ("MetLife"), One Madison Avenue, New York, New York 10010, a mutual life insurance company organized and existing under the laws of the State of New York, and Network Medical Review Company ("Contractor"), a corporation organized and existing under the laws of the State of Illinois.

WHEREAS, MetLife wishes to obtain from Contractor, and Contractor wishes to provide to MetLife, certain services as more fully described herein;

NOW THEREFORE, in consideration of the promises hereinafter set forth, Contractor and MetLife acknowledge and agree as follows:

Section I. Definitions

When capitalized and used in this Agreement, the following terms shall be defined as set forth below:

1. Business Day – Every weekday of the year, between the hours of 8:00 A.M. and 8:00 P.M., Eastern Standard Time, with the exception of the weekday observances of holidays communicated to Contractor by MetLife at the commencement of this Agreement and each succeeding year for which this Agreement is in effect.

2. Physician – A physician (or psychologist) chosen by Contractor, and who at all times during the term of this Agreement 1.) holds all necessary licenses and certifications to practice as a physician (or psychologist) in the jurisdiction in which he or she performs PFRs and; 2.) pertaining to the Referred Person's previously diagnosed medical and/or psychiatric/psychological condition, has recognized expertise in conducting PFRs for such condition, board certification (if a physician) in the practice area related to such condition, and engages in an active clinical practice which includes treatment of such condition.

3. Physician File Review (PFR) – A record review performed by a Physician that addresses the specific questions set forth in the MetLife referral and includes a review of pertinent medical and psychiatric/psychological records and the presenting medical or psychiatric/psychological condition, as well as obtaining and reviewing any information from the treating Physician that is needed to respond to questions in the referral or to complete the assessment of the Referred Person. A PFR shall not include a determination by the Physician as to whether or not the Referred Person is "disabled" as that term may be defined or used in a particular disability income insurance contract or self-funded disability income benefit plan under which a Referred Person may be covered.

JUL-11-2005  18:25        815 399 8237          nse

Declaration of Elizabeth K. Green

Walker 008

JUL-11-2005  14:02      UNITED-WOMACK LEGAL                    713  42F0600   P.04/13

4.  PFR Report — A written report signed by the Physician performing the PFR which answers all of the questions contained in the MetLife referral and includes:

    a)  A header with the Referred Person's name, MetLife Disability's claim number, the Referred Person's Social Security Number, job title, and age, employer name, date of disability, date of referral, diagnoses, and vendor tax ID#;

    b)  An analysis of the file including documentation of the reviewing Physician's rationale for his/her opinions and conclusions;

    c)  A summary of the Referred Person's subjective and objective symptoms and diagnoses;

    d)  A summary of physical examination, diagnostic tests and therapeutic procedures performed, as described in the reviewed file information;

    e)  The reviewing Physician's opinion regarding functional limitations according to the reviewed file information;

    f)  The reviewing Physician's recommendation for additional information that might be required in the future;

    g)  The reviewing Physician's opinion regarding the Referred Person's medical prognosis;

    h)  A summary of all documents reviewed;

    i)  Identification of any discrepancies between objective clinical information versus the Referred Person's narrative;

    j)  Documentation of any conversations with treating physicians;

    k)  Statement verifying performance of the PFR; and

    l)  Reviewer's name, specialty and license number.

The PFR Report shall not include a determination by the Physician as to whether or not the Referred Person is "disabled" as that term may be defined or used in a particular disability income insurance contract or self-funded disability income benefit plan under which a Referred Person may be covered.

5.  Referred Person — An individual identified by MetLife in its referral to Contractor, and for whom MetLife has requested Contractor to schedule a PFR and provide a PFR Report.

Section 2.  Services to be Performed

A.  During the term of this Agreement, as and when requested by MetLife, Contractor shall provide the following services (hereinafter, the "Services"):

    1.  Schedule a PFR for each Referred Person, secure performance of the PFR by a Physician, and provide PFR Reports on Referred Persons to MetLife; all in full compliance with the PFR Scheduling and Reporting Procedures set forth on Exhibit A, attached hereto and made a part hereof.

2}

JUL-11-2005  18:25          615 399 5437          85%                          P.04

Walker 009

JUL-11-2005  11:02          UNITED-WOMACK LEGAL                    713  4260600   P.05/13

2. Provide the following reports to MetLife in the respective format set forth in Exhibit B, attached hereto and made a part hereof, or in such other format requested by MetLife:

   a. Monthly Exception Report – In the format of Exhibit B.1.

   b. Quarterly Report – In the format of Exhibit B.2.

   c. Annual Report – In the format of Exhibit B.3.

B.   Contractor and MetLife agree that during this Agreement, Contractor, in its sole discretion, may provide similar services to other insurers, and MetLife, in its sole discretion, may have other vendors provide it with similar services.

## Section 3.  The Term

Unless otherwise terminated in accordance with the provisions of Section 4, the initial term of this Agreement shall begin on October 1, 1999, and end on December 31, 1999.  This Agreement will be automatically renewed for successive one year periods commencing January 1, 2000, and each January 1st thereafter ("Renewal Date"), unless this Agreement is terminated earlier in accordance with termination provisions in Section 4.

## Section 4.  Termination

A.  Termination – This Agreement may be terminated by MetLife or Contractor for any reason, with or without cause, at any time, upon sixty (60) days written notice.

B.  Continuation Period – In the event that this Agreement is terminated by either MetLife or Contractor as provided in 4.A., above, contractor shall, at MetLife's option, continue to meet all of its obligations and provide all Services in accordance with the terms of this Agreement for a continuation period, on a month to month basis, for up to six (6) months following the effective date of termination.

## Section 5.  Compensation

For the Services performed by Contractor to MetLife's reasonable satisfaction under this Agreement, MetLife will pay Contractor a standard PFR per file fee of $ 475.00 in total for an occupational medicine or internal medicine PFR and PFR Report or $575.00 in total for a specialty PFR and PFR Report.

3:
JUL-11-2005  10:25          919 395 5437          95%          P.04

Walker 0010

JUL-11-2005  11:03        UNITED-WOMACK LEGAL                    915  4262600    P.06/13

### Section 6.  Monthly Statements and Payment Terms

Contractor shall submit a detailed invoice and summary report to MetLife within ten (10) days after the end of each month, such statements conforming in all respects to Exhibits C.1. and C.2., attached hereto, or to such other formats requested by MetLife.

All payments made pursuant to this Agreement shall be due and payable within forty-five (45) days after MetLife's receipt of a statement, bill or invoice from Contractor.

### Section 7.  Confidential Medical Information

Contractor acknowledges that certain information received from MetLife, including, but not limited to, personal and medical information of Referred Persons ("Confidential Medical Information"), may be proprietary and/or confidential in nature. All such information shall be used by Contractor and Physicians solely for purposes of providing Services pursuant to this Agreement. Contractor agrees to indemnify and hold MetLife harmless from any and all losses and expenses sustained by MetLife as a result of the unauthorized use or disclosure of such Confidential Medical Information by Contractor or Physicians.

In addition, Contractor warrants and represents to MetLife that it, and the Physicians to whom access to the Confidential Medical Information is granted hereunder, shall comply with any and all federal, state and local privacy laws, statutes, rules, regulations, and ordinances.

### Section 8.  Confidential Information and Trade Secrets

Contractor agrees that it will not at any time during or after the termination of this Agreement reveal, divulge or make known to any person, firm or corporation any secret or confidential information concerning MetLife's business or operations, which information became known or available to Contractor during the term of this Agreement ("Confidential Information"). Upon the termination of this Agreement, Contractor shall promptly return all Confidential Information to MetLife, whether in written or electronic form, and neither Contractor nor any of its agents, subcontractors, representatives, third party consultant or employees (nor any of their respective employees) shall retain any copies, extracts, or other reproductions thereof, in whole or in part, of such Confidential Information in any form whatsoever.

### Section 9.  Proprietary Rights and Ownership of Records

All material in any format ("Material") which shall include PFR Reports, test results, diagrams, screens, and other documentation or records prepared by Contractor for MetLife or prepared by Physicians for MetLife under this Agreement, whether completed or in the process of creation, shall be deemed to be work made for hire and made in the course of the Services rendered hereunder and shall belong exclusively to MetLife. No rights of any kind in the Material are reserved to Contractor. Contractor shall take all necessary steps to assure that all Material prepared

4)
JUL-11-2005  10:28              815 389 5437            95%                    P.

JUL-11-2005  11:03        UNIYFD-WCMACK LEGAL                    713   4260600   P.07/13

by it which includes or reflects any Confidential Information or Confidential Medical Information is returned to MetLife upon termination of this Agreement.

## Section 10. Representations and Warranties

Contractor hereby warrants and represents that:

(a)    The Material will conform in all respects to MetLife's specifications and other reasonable requirements;

(b)    It has expertise in performing the Services it may be obligated to perform under this Agreement; and

(c)    All Physicians to whom Contractor refers Referred Persons meet the requirements set forth in Section 1, 5, of this Agreement and that each such Physician maintains medical malpractice insurance for at least one million dollars per occurrence.

## Section 11. Assignment

No party hereto shall assign this Agreement or any rights or obligations hereunder without the prior written consent of the other party hereto, and any such attempted assignment without such prior written consent shall be void and of no force or effect; provided, however, that MetLife may assign its rights and obligations hereunder to any of its affiliates, subsidiaries or organizations controlled by, or under common control with, it or them ("Affiliated Entities").

## Section 12. Independent Contractor

(a) Neither Contractor nor Physicians used by Contractor nor any of its agents nor any of their respective employees who perform work in connection with the provision of Services shall for any purpose including (but not limited to) federal or state tax purposes be considered an employee or agent of MetLife or any of its Affiliated Entities. No such person shall be entitled to participate in MetLife's employee insurance and retirement programs. Contractor (or, in the case of persons employed by any Physician or agent, such Physician or agent) shall treat any such person as its employee for all purposes, including (but not limited to) the payment of federal, state and local employment and social security taxes and shall deduct from such persons salaries all applicable taxes, charges for benefits and any and all other deductions and withholdings which are required by law.

(b) In addition to all other requirements herein, Contractor shall have full responsibility for the actions and omissions of all personnel employed by Contractor, Physician or any agent who are involved in performing Services and for any Losses, as hereinafter defined, arising therefrom.

JUL-11-2005  10:23                815 399 5437                      93%              P.04

JUL-11-2005  11:03        UNITED-WOMACK LEGAL                        713  4200600    P.08/13

### Section 13.  Prohibition of Conflict of Interest

During the term of this Agreement, Contractor shall not perform any services or accept employment of any character hostile to the interests of MetLife, or otherwise engage in activities adverse to the interests of MetLife.

### Section 14.  Limitation of Remedies

EXCEPT TO THE EXTENT REQUIRED BY LAW OR AS OTHERWISE PROVIDED IN THIS AGREEMENT, CONTRACTOR AGREES THAT METLIFE SHALL NOT BE LIABLE FOR ANY LOST PROFITS, LOST SAVINGS OR OTHER SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES, EVEN IF METLIFE HAS BEEN ADVISED OF OR COULD HAVE FORESEEN THE POSSIBILITY OF SUCH DAMAGES. THE AGGREGATE LIABILITY OF METLIFE UNDER THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO LIABILITY FOR DAMAGES RESULTING FROM METLIFE'S NEGLIGENCE AND/OR INTENTIONAL, WILLFUL OR WRONGFUL CONDUCT, SHALL NOT EXCEED THE TOTAL FEES OWED BY METLIFE TO CONTRACTOR FOR SERVICES PROVIDED HEREUNDER.

### Section 15.  Indemnification

Contractor agrees to indemnify MetLife (and its affiliates, and its and their respective directors, officers and other employees, and all other persons and entities acting on behalf of or under the control of any of them) against, and hold MetLife (and them) harmless from Losses that may be sustained by MetLife (or them) by reason of any misrepresentation, or negligent or wrongful acts or omissions, or incorrect warranty, or any breach of any representation or warranty, covenant, agreement, obligation or undertaking in this Agreement by Contractor or its directors, officers, employees or other representatives, or by any person or entity acting on behalf of or under control of Contractor, including Physicians (except that this indemnification shall not be applicable if such Losses are adjudged to have been caused solely by MetLife's act or omissions).

The term "Losses" shall include but not be limited to costs, claims, damages, legal fees (including, but not limited to, reasonable fees and disbursements of counsel incurred by MetLife in any action or proceeding between MetLife and Contractor or between MetLife and any third party), liabilities, penalties and expenses.

### Section 16.  Equal Employment Opportunity; Compliance

During the term of this Agreement, Contractor agrees to comply with all Federal Equal Opportunity laws, orders and regulations, including Federal Executive Order 11346, the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Rehabilitation Act of 1973, the Vietnam Era Veterans Readjustment Assistance Act of 1974, the Americans with Disabilities Act of 1990, and the Civil Rights Act of 1991. Contractor will not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin.

6|
JUL-11-2005  10:25            813 399 5437            95%                    9.00

JUL-11-2005  11:04        UNITED-WOMACK LEGAL                    713  4262600    P.09/13

and Contractor and its agents shall take affirmative action to ensure that applicants and employees are treated without regard to their race, color, religion, sex, or national origin.

In order to satisfy MetLife's obligation under Federal law, MetLife requires that Contractor provide to MetLife a certificate that Contractor is in compliance with these provisions. Attached hereto as Exhibit D is a copy of the certification which MetLife requires upon execution of this Agreement and annually hereafter. In the even Contractor does not have more than twenty (20) employees, Contractor shall advise Metlife so that MetLife can update its records to show that MetLife is not required to obtain this certificate from Contractor.

Section 17.  **Communications**

Other than the notices required in Exhibit A attached hereto, all notices requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given: (a) on the date of service if served personally on the party hereto to whom notice is to be given; (b) on the date of transmission if sent via facsimile transmission to the telecopy number given below, and telephonic confirmation of transmission is obtained promptly after completion of transmission; (c) on the day after delivery to Federal Express or similar overnight carrier or the Express Mail Service maintained by the United State Postal Service; or (d) on the fifth day after mailing, if mailed to the party to whom such notice is to be given, by first class mail, registered or certified, postage prepaid and properly addressed, to the party as follows:

If to Contractor:

_____
_____

Attention: _____
_____

        Fax: ( ) _____

If to MetLife:

        Metropolitan Life Insurance Company
        1660 Feehanville Dr.
        Mt. Prospect, IL 60056

Attention: Lori K. Rieth
        Assistant Vice President
        Institutional Business, Disability Product Area
        Fax: (847) 297-3466

7|

JUL-11-2005  18:26        815 390 5437              95%                  P.09

JUL-11-2005  11:04        UNITED-WOMACK LEGAL                    713  4268600    P.10/13

cc. Justin K. Hixson
    Counsel
    One Madison Avenue
    Law Department, Area 21-A
    New York, New York 10010
    Fax: (212) 578-3916

Any party hereto may change its address for the purpose of this Section by giving the other party written notice of its new address in the manner set forth above.

## Section 18.  Survival

Contractor's representations, warranties and obligations set forth in this Agreement shall survive the expiration, termination or rescission of this Agreement and continue in full force and effect.

## Section 19.  Section Headings

The headings of the sections of this Agreement are inserted to convenient reference only and are not intended to be part of or to affect the meaning or interpretation of this Agreement.

## Section 20.  Publicity

Nothing contained in this Agreement shall be construed as conferring any right to use, or to refer to in any advertising, publicity, promotion, marketing or other activities, any name, trade name, trade or service mark, or any other designation of MetLife or any of its Affiliated Entities, including, but not limited to, any contraction, abbreviation or simulation thereof. Contractor agrees not to disclose to any third party other than its Agents that it has performed or contracted to perform Services hereunder for MetLife, or the terms or conditions of this Agreement, without the prior express written consent of MetLife.

## Section 21.  Applicable Law and Forum

This Agreement shall be governed by and construed, and the legal relations between the parties shall be determined in accordance with, the laws of the State of new York, without giving effect to the principles of conflicts of laws. No suit or action arising under or with respect to this Agreement shall be brought unless instituted and maintained in any state or federal court of competent jurisdiction in New York County, State of New York.

8]
JUL-11-2005  10:28          815 389 5437          95%                  P.28

JUL 11-2005  11:04          UNITED-WOMACK LEGAL                    713  4760800   P.11/13

### Section 22.  Entire Agreement

This Agreement constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, whether oral or written, of the parties. In the event of a conflict between the terms of this Agreement and those appearing on the face or reverse of any document provided by Contractor, the terms and conditions of this Agreement shall prevail, except as expressly provided in this Agreement.

### Section 23.  Severability

If any provision of this Agreement shall be declared null, void or unenforceable in whole or in part by any court, arbitrator or governmental agency, said provision shall survive to the extent it is not so declared and all the other provisions of this Agreement shall remain in full force and effect unless, in each case, such declaration shall serve to deprive any of the parties hereto of the fundamental benefits of this Agreement.

### Section 24.  Amendments

No amendment or modifications to this Agreement shall be valid or enforceable unless in writing executed by the authorized representatives of MetLife and Contractor.

### Section 25.  Waiver

No term or provision hereof shall be deemed waived and no breach hereof shall be deemed consented to, unless such waiver or consent, as the case may be, is express and in writing signed by the party claimed to have waived or consented. No such waiver shall constitute a waiver of any other term or provision hereof; and no such consent shall constitute a consent to any other breach hereof.

9\
JUL-11-2005  10:46           815 398 5437              95%                  P 12

Walker 0016

### Section 26.  Attorneys' Fees

Notwithstanding any limitation herein, in any litigation between the parties hereto arising out of or with respect to this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees (including, but not limited to, allocated costs of in-house staff counsel) and court costs.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective duly authorized representatives as of the day and year above written.

| Metropolitan Life Insurance Company | Network Medical Review Company |
|---|---|
| By: _Lori Rieth_ | By: _____ |
| Name: _Lori Rieth_ | Name: _Robert C Porter MD_ |
| Title: _AVP_ | Title: _CEO – President_ |
| Date: _10/1/99_ | Date: _10/3/95_ |

Walker 0017

JUL-11-2005  11:05        UNITED-WOMACK LEGAL                    713  4260600    P.13/13

# EXHIBIT A

## PFR Scheduling and Reporting Procedures

### 1. Receiving Referrals

Contractor shall arrange for adequate personnel to be available to receive and schedule PFR referrals from MetLife during the Business Day.

### 2. Scheduling PFRs

No later than during the second Business Day following Contractor's receipt of a PFR referral from MetLife, Contractor shall assign a reviewing Physician and arrange for the Physician's office to contact MetLife by telephone within 24 hours of assignment to discuss the referral.

### 3. Completed PFRs

Contractor shall obtain the PFR Report from the Physician, review it to ensure that it responds to all questions in the MetLife referral and contains all the information required to constitute a PFR Report as defined in this Agreement, and provide the complete PFR Report to MetLife electronically no later than during the tenth Business Day following the MetLife referral, or if requested by MetLife on an expedited basis, no later than on the fifth Business Day following the MetLife referral, with a verbal preliminary report no later than one (1) Business Day following the Physician's review of the file.

JUL 11 2005  10:56            815 399 5487                95%                    P.13

Declaration of Elizabeth K. Green                        Walker 0018

EXHIBIT B.1.

**VENDOR NAME**
**MONTHLY EXCEPTION REPORT**

| CLAIMANT NAME (last, first) | CLAIM NUMBER | SSN | REPORT NUMBER | REFERRAL DATE | DESCRIPTION OF EXCEPTION | AUTHORIZED BY | DATE AUTHORIZED | OFFICE |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

PFR EXHIBIT B.2.

## VENDOR NAME
### Quarterly PFR Report

| Claimant Name (last, first) | CLAIM # | SSN | Report# | Referral Date | Requestor | Office | Diagnosis | Provider Name | Provider Specialty | ReviewDate | Cost |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

Declaration Of Elizabeth K. Green

PFR    HIBIT B.3.

*VENDOR NAME*
## Annual PFR Report

| Claimant Name (last, first) | CLAIM # | SSN | Report # | Referral Date | Requestor | Office | Diagnosis | Provider Name | Provider Specialty | ReviewDate | Cost |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

Declaration of Elizabeth K. Green
27

07/12/2005 TUE 12:21  FAX 315 399 5457 NMR ELITE PHYSICIANS                    ☒004/005

EXHIBIT C.1.

## SAMPLE INVOICE

Vendor Name
101 Street Name
Any City, ST  12345

To: Metropolitan Life Insurance Company
    Heather Martin
    P.O. Box 3017
    Utica, NY  13504


INVOICE DATE:      X/X/XXXX

INVOICE #:         XXXXX

TOTAL AMT DUE: $XXXX.XX

VENDOR'S TAX ID NUMBER:    XXXXXXX

Walker 0022
Declaration of Elizabeth K. Green

PFR EXHIBIT C.2.                            SAMPLE INVOICE SUMMARY

| CLAIMANT-NAME | | CLAIMANT SSN | REPORT NUMBER | CLAIM NUMBER | OFFICE | TYPE OF SERVICE | DATE OF PHYSICIAN REVIEW | TOTAL FEES | COST CENTER CODE | GENERAL LEDGER CODE |
|---|---|---|---|---|---|---|---|---|---|---|
| KENT | MARY | 123456789 | 12345 | 123456789123 | Utica | PFR | XX/XX/XXXX | $XX.XX | 123456 | 6040-012-LX |
| SMITH | SUE | 234567890 | 54321 | 234567891234 | Atlanta | PFR | XX/XX/XXXX | $XX.XX | 233456 | 6040-012-LV |
| JOHNSON | BOB | 345678901 | 1000001 | 345678912345 | Utica | PFR | XX/XX/XXXX | $XX.XX | 123457 | 6040-012-LW |
| THOMAS | JIM | 456789012 | 661166 | 456789123456 | Utica | PFR | XX/XX/XXXX | $XX.XX | 545685 | 6082-003-LX |
| | | | | | | | | $XXX.XX | total | |

## PROOF OF SERVICE

STATE OF CALIFORNIA          )
                             )
COUNTY OF LOS ANGELES )

    I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 19839 Nordhoff Street, Northridge, CA 91324.

    On January 24, 2008, I served the foregoing document described as: DECLARATION OF ELIZABETH K. GREEN IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT on the interested parties in this action by serving a copy thereof  in a sealed envelope addressed as follows:

    Christopher J. Keller, Esq.
    Sedgwick, Detert, Moran & Arnold LLP
    One Market Plaza
    Steuart Tower, 8th Floor
    San Francisco, CA 94105

[X]    NOTICE OF ELECTRONIC FILING

[ ]    (BY MAIL)  I deposited such envelope in the mail at Northridge, California.  The envelope was mailed with postage thereon fully prepaid.

[ ]    As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Northridge, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]    (BY FAX)  I faxed such document to the facsimile number above following regular business practices.

[X]    (BY PERSONAL SERVICE)  I caused hand delivery of such envelopes to the office of the addressee so indicated.

[ ]    (STATE) I declare under penalty of perjury under the Laws of the State of California that the foregoing is true and correct.

[X]    (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

    Executed on January 24, 2008, at Northridge, California.

                /s/Denise Anderson
                Denise Anderson