Lisa S. Kantor, Esq. - State Bar No. 110678
  e-mail: lkantor@kantorlaw.net
Elizabeth K. Green, Esq. - State Bar No. 199634
  e-mail: egreen@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, CA 91324
Telephone:  (818) 886-2525
Facsimile:  (818) 350-6272

Attorneys for Plaintiff,
DAVID WALKER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO

| | |
|---|---|
| DAVID WALKER, | CASE NO: C 07-3772 WHA |
| Plaintiff, | |
| VS. | PLAINTIFF'S NOTICE OF UNITED STATES SUPREME COURT DECISION IN *GLENN v. METLIFE* |
| METROPOLITAN LIFE INSURANCE COMPANY; KAISER PERMANENTE FLEXIBLE BENEFITS PLAN, and DOES 1 THROUGH 10, INCLUSIVE, | |
| Defendants. | |

In compliance with this Court's order of April 29, 2008, counsel for plaintiff hereby notifies the Court that the Supreme Court has issued its decision in *Glenn v. Metropolitan Life Insurance Company*, – S.Ct. –, June 19, 2008 WL 161473 (U.S. 2008). A copy of the decision is attached hereto.


DATED:   June 30, 2008                    KANTOR & KANTOR LLP


                                          */s/ Elizabeth K. Green*
                                          Elizabeth K. Green
                                          Attorneys for Plaintiff,
                                          David Walker

1

(Slip Opinion)          OCTOBER TERM, 2007                    1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## METROPOLITAN LIFE INSURANCE CO. ET AL. *v.* GLENN

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 06–923.  Argued April 23, 2008—Decided June 19, 2008

Petitioner Metropolitan Life Insurance Company (MetLife) is an ad-
ministrator and the insurer of Sears, Roebuck & Company's long-
term disability insurance plan, which is governed by the Employee
Retirement Income Security Act of 1974 (ERISA).  The plan gives
MetLife (as administrator) discretionary authority to determine the
validity of an employee's benefits claim and provides that MetLife (as
insurer) will pay the claims.  Respondent Wanda Glenn, a Sears em-
ployee, was granted an initial 24 months of benefits under the plan
following a diagnosis of a heart disorder.  MetLife encouraged her to
apply for, and she began receiving, Social Security disability benefits
based on an agency determination that she could do no work.  But
when MetLife itself had to determine whether she could work, in or-
der to establish eligibility for extended plan benefits, it found her ca-
pable of doing sedentary work and denied her the benefits.  Glenn
sought federal-court review under ERISA, see 29 U. S. C.
§1132(a)(1)(B), but the District Court denied relief.  In reversing, the
Sixth Circuit used a deferential standard of review and considered it
a conflict of interest that MetLife both determined an employee's eli-
gibility for benefits and paid the benefits out of its own pocket.  Based
on a combination of this conflict and other circumstances, it set aside
MetLife's benefits denial.

*Held:*

  1. *Firestone Tire & Rubber Co.* v. *Bruch,* 489 U. S. 101, sets out
four principles as to the appropriate standard of judicial review un-
der §1132(a)(1)(B): (1) A court should be "guided by principles of trust
law," analogizing a plan administrator to a trustee and considering a
benefit determination a fiduciary act, *id.,* at 111–113; (2) trust law

Syllabus

principles require *de novo* review unless a benefits plan provides oth-
erwise, *id.,* at 115; (3) where the plan so provides, by granting "the
administrator or fiduciary discretionary authority to determine eligi-
bility," "a deferential standard of review [is] appropriate," *id.,* at 111,
115; and (4) if the administrator or fiduciary having discretion "is op-
erating under a conflict of interest, that conflict must be weighed as a
'facto[r] in determining whether there is an abuse of discretion,' " *id.,*
at 115.  Pp. 3–5.

  2. A plan administrator's dual role of both evaluating and paying
benefits claims creates the kind of conflict of interest referred to in
*Firestone.*  That conclusion is clear where it is the employer itself that
both funds the plan and evaluates the claim, but a conflict also exists
where, as here, the plan administrator is an insurance company.  For
one thing, the employer's own conflict may extend to its selection of
an insurance company to administer its plan.  For another, ERISA
imposes higher-than-marketplace quality standards on insurers, re-
quiring a plan administrator to "discharge [its] duties" in respect to
discretionary claims processing "solely in the interests of the [plan's]
participants and beneficiaries," 29 U. S. C. §1104(a)(1); underscoring
the particular importance of accurate claims processing by insisting
that administrators "provide a 'full and fair review' of claim denials,"
*Firestone, supra,* at 113; and supplementing marketplace and regula-
tory controls with judicial review of individual claim denials, see
§1132(a)(1)(B).  Finally, a legal rule that treats insurers and employ-
ers alike in respect to the *existence* of a conflict can nonetheless take
account of different circumstances by treating the circumstances as
diminishing the conflict's *significance* or *severity* in individual cases.
Pp. 5–8.

  3. The significance of the conflict of interest factor will depend upon
the circumstances of the particular case.  *Firestone's* "weighed as a
'factor' " language, 489 U. S., at 115, does not imply a change in the
*standard* of review, say, from deferential to *de novo.*  Nor should this
Court overturn *Firestone* by adopting a rule that could bring about
near universal *de novo* review of most ERISA plan claims denials.
And it is not necessary or desirable for courts to create special bur-
den-of-proof rules, or other special procedural or evidentiary rules, fo-
cused narrowly upon the evaluator/payor conflict.  *Firestone* means
what the word "factor" implies, namely, that judges reviewing a bene-
fit denial's lawfulness may take account of several different consid-
erations, conflict of interest being one.  This kind of review is no
stranger to the judicial system.  Both trust law and administrative
law ask judges to determine lawfulness by taking account of several
different, often case-specific, factors, reaching a result by weighing all
together.  Any one factor will act as a tiebreaker when the others are

Syllabus

closely balanced. Here, the Sixth Circuit gave the conflict some weight, but focused more heavily on other factors: that MetLife had encouraged Glenn to argue to the Social Security Administration that she could do no work, received the bulk of the benefits of her success in doing so (being entitled to receive an offset from her retroactive Social Security award), and then ignored the agency's finding in concluding that she could do sedentary work; and that MetLife had emphasized one medical report favoring denial of benefits, had deemphasized other reports suggesting a contrary conclusion, and had failed to provide its independent vocational and medical experts with all of the relevant evidence. These serious concerns, taken together with some degree of conflicting interests on MetLife's part, led the court to set aside MetLife's discretionary decision. There is nothing improper in the way this review was conducted. Finally, the *Firestone* standard's elucidation does not consist of detailed instructions, because there "are no talismanic words that can avoid the process of judgment." *Universal Camera Corp.* v. *NLRB*, 340 U. S. 474, 489. Pp. 8–13.

461 F. 3d 660, affirmed.

BREYER, J., delivered the opinion of the Court, in which STEVENS, SOUTER, GINSBURG, and ALITO, JJ., joined, and in which ROBERTS, C. J., joined as to all but Part IV. ROBERTS, C. J., filed an opinion concurring in part and concurring in the judgment. KENNEDY, J., filed an opinion concurring in part and dissenting in part. SCALIA, J., filed a dissenting opinion, in which THOMAS, J., joined.

Cite as: 554 U. S. ____ (2008)          1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 06–923

_____

METROPOLITAN LIFE INSURANCE COMPANY,
ET AL., PETITIONERS *v.* WANDA GLENN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[June 19, 2008]

JUSTICE BREYER delivered the opinion of the Court.

The Employee Retirement Income Security Act of 1974
(ERISA) permits a person denied benefits under an em-
ployee benefit plan to challenge that denial in federal
court. 88 Stat. 829, as amended, 29 U. S. C. §1001 *et seq.*;
see §1132(a)(1)(B). Often the entity that administers the
plan, such as an employer or an insurance company, both
determines whether an employee is eligible for benefits
and pays benefits out of its own pocket. We here decide
that this dual role creates a conflict of interest; that a
reviewing court should consider that conflict as a factor in
determining whether the plan administrator has abused
its discretion in denying benefits; and that the significance
of the factor will depend upon the circumstances of the
particular case. See *Firestone Tire & Rubber Co.* v. *Bruch*,
489 U. S. 101, 115 (1989).

I

Petitioner Metropolitan Life Insurance Company (Met-
Life) serves as both an administrator and the insurer of
Sears, Roebuck & Company's long-term disability insur-
ance plan, an ERISA-governed employee benefit plan. See

Opinion of the Court

App. 182a–183a; 29 U. S. C. §1003.  The plan grants Met-
Life (as administrator) discretionary authority to deter-
mine whether an employee's claim for benefits is valid; it
simultaneously provides that MetLife (as insurer) will
itself pay valid benefit claims.  App. 181a–182a.

Respondent Wanda Glenn, a Sears employee, was diag-
nosed with severe dilated cardiomyopathy, a heart condi-
tion whose symptoms include fatigue and shortness of
breath.  She applied for plan disability benefits in June
2000, and MetLife concluded that she met the plan's stan-
dard for an initial 24 months of benefits, namely, that she
could not "perform the material duties of [her] own job."
*Id.,* at 159a–160a.  MetLife also directed Glenn to a law
firm that would assist her in applying for federal Social
Security disability benefits (some of which MetLife itself
would be entitled to receive as an offset to the more gener-
ous plan benefits).  In April 2002, an Administrative Law
Judge found that Glenn's illness prevented her not only
from performing her own job but also "from performing
any jobs [for which she could qualify] existing in signifi-
cant numbers in the national economy."  App. to Pet. for
Cert. 49a; see also 20 CFR §404.1520(g) (2007).  The Social
Security Administration consequently granted Glenn
permanent disability payments retroactive to April 2000.
Glenn herself kept none of the backdated benefits: three-
quarters went to MetLife, and the rest (plus some addi-
tional money) went to the lawyers.

To continue receiving Sears plan disability benefits after
24 months, Glenn had to meet a stricter, Social-Security-
type standard, namely, that her medical condition ren-
dered her incapable of performing not only her own job but
of performing "the material duties of any gainful occupa-
tion for which" she was "reasonably qualified."  App. 160a.
MetLife denied Glenn this extended benefit because it
found that she was "capable of performing full time seden-
tary work."  *Id.,* at 31a.

Opinion of the Court

After exhausting her administrative remedies, Glenn brought this federal lawsuit, seeking judicial review of MetLife's denial of benefits.    See 29 U. S. C. §1132(a)(1)(B); 461 F. 3d 660, 665 (CA6 2006).  The District Court denied relief.  Glenn appealed to the Court of Appeals for the Sixth Circuit.  Because the plan granted MetLife "discretionary authority to . . . determine benefits," the Court of Appeals reviewed the administrative record under a deferential standard.  *Id.,* at 666.  In doing so, it treated "as a relevant factor" a "conflict of interest" arising out of the fact that MetLife was "authorized both to decide whether an employee is eligible for benefits and to pay those benefits."  *Ibid.*

The Court of Appeals ultimately set aside MetLife's denial of benefits in light of a combination of several circumstances: (1) the conflict of interest; (2) MetLife's failure to reconcile its own conclusion that Glenn could work in other jobs with the Social Security Administration's conclusion that she could not; (3) MetLife's focus upon one treating physician report suggesting that Glenn could work in other jobs at the expense of other, more detailed treating physician reports indicating that she could not; (4) MetLife's failure to provide all of the treating physician reports to its own hired experts; and (5) MetLife's failure to take account of evidence indicating that stress aggravated Glenn's condition.  See *id.,* at 674.

MetLife sought certiorari, asking us to determine whether a plan administrator that both evaluates and pays claims operates under a conflict of interest in making discretionary benefit determinations.  The Solicitor General suggested that we also consider "'how'" any such conflict should "'be taken into account on judicial review of a discretionary benefit determination.'"  Brief for United States as *Amicus Curiae* on Pet. for Cert. 22.  We agreed to consider both questions.  See 552 U. S. __ (2008).

Opinion of the Court

## II

In *Firestone Tire & Rubber Co.* v. *Bruch*, 489 U. S. 101, this Court addressed "the appropriate standard of judicial review of benefit determinations by fiduciaries or plan administrators under" §1132(a)(1)(B), the ERISA provision at issue here. *Id.,* at 105; see also *id.,* at 108. *Firestone* set forth four principles of review relevant here.

(1) In "determining the appropriate standard of review," a court should be "guided by principles of trust law"; in doing so, it should analogize a plan administrator to the trustee of a common-law trust; and it should consider a benefit determination to be a fiduciary act (*i.e.,* an act in which the administrator owes a special duty of loyalty to the plan beneficiaries). *Id.,* at 111–113. See also *Aetna Health Inc.* v. *Davila*, 542 U. S. 200, 218 (2004); *Central States, Southeast & Southwest Areas Pension Fund* v. *Central Transport, Inc.*, 472 U. S. 559, 570 (1985).

(2) Principles of trust law require courts to review a denial of plan benefits "under a *de novo* standard" unless the plan provides to the contrary. *Firestone*, 489 U. S., at 115; see also *id.,* at 112 (citing, *inter alia*, 3 A. Scott & W. Fratcher, Law of Trusts §201, p. 221 (4th ed. 1988); G. Bogert & G. Bogert, Law of Trusts and Trustees §559, pp. 162–168 (2d rev. ed. 1980) (hereinafter Bogert); 1 Restatement (Second) of Trusts §201, Comment *b* (1957) (hereinafter Restatement)).

(3) Where the plan provides to the contrary by granting "the administrator or fiduciary *discretionary authority* to determine eligibility for benefits," *Firestone*, 489 U. S., at 115 (emphasis added), "[t]rust principles make a *deferential standard* of review appropriate," *id.,* at 111 (citing Restatement §187 (abuse-of-discretion standard); Bogert §560, at 193–208; emphasis added).

(4) If "a benefit plan gives discretion to an administrator or fiduciary who *is operating under a conflict of interest*, that conflict must be *weighed as a 'factor* in determining

Opinion of the Court

whether there is an abuse of discretion.'" *Firestone*, *supra*, at 115 (quoting Restatement §187, Comment *d;* emphasis added; alteration omitted).

The questions before us, while implicating the first three principles, directly focus upon the application and the meaning of the fourth.

## III

The first question asks whether the fact that a plan administrator both evaluates claims for benefits and pays benefits claims creates the kind of "conflict of interest" to which *Firestone*'s fourth principle refers. In our view, it does.

That answer is clear where it is the employer that both funds the plan and evaluates the claims. In such a circumstance, "every dollar provided in benefits is a dollar spent by . . . the employer; and every dollar saved . . . is a dollar in [the employer's] pocket." *Bruch* v. *Firestone Tire & Rubber Co.*, 828 F. 2d 134, 144 (CA3 1987). The employer's fiduciary interest may counsel in favor of granting a borderline claim while its immediate financial interest counsels to the contrary. Thus, the employer has an "interest . . . conflicting with that of the beneficiaries," the type of conflict that judges must take into account when they review the discretionary acts of a trustee of a common-law trust. Restatement §187, Comment *d;* see also *Firestone*, *supra*, at 115 (citing that Restatement comment); cf. Black's Law Dictionary 319 (8th ed. 2004) ("conflict of interest" is a "real or seeming incompatibility between one's private interests and one's public or fiduciary duties").

Indeed, *Firestone* itself involved an employer who administered an ERISA benefit plan and who both evaluated claims and paid for benefits. See 489 U. S.*,* at 105. And thus that circumstance quite possibly was what the Court had in mind when it mentioned conflicted administrators.

Opinion of the Court

See *id.,* at 115. The *Firestone* parties, while disagreeing about other matters, agreed that the dual role created a conflict of interest of some kind in the employer. See Brief for Petitioners 6–7, 27–29, Brief for Respondents 9, 26, and Brief for United States as *Amicus Curiae* 22, in *Firestone Tire & Rubber Co.* v. *Bruch*, O. T. 1988, No. 87–1054.

MetLife points out that an employer who creates a plan that it will both fund and administer foresees, and implicitly approves, the resulting conflict. But that fact cannot change our conclusion. At trust law, the fact that a settlor (the person establishing the trust) approves a trustee's conflict does not change the legal need for a judge later to take account of that conflict in reviewing the trustee's discretionary decisionmaking. See Restatement §107, Comment *f* (discretionary acts of trustee with settlor-approved conflict subject to "careful scrutiny"); *id.,* §107, Comment *f*, Illustration 1 (conflict is "a factor to be considered by the court in determining later whether" there has been an "abuse of discretion"); *id.,* §187, Comment *d* (same); 3 A. Scott, W. Fratcher, & M. Ascher, Scott and Ascher on Trusts §18.2, pp. 1342–1343 (5th ed. 2007) (hereinafter Scott) (same). See also, *e.g.,* Bogert §543, at 264 (rev. 2d ed. 1993) (settlor approval simply permits conflicted individual to act as a trustee); *id.,* §543(U), at 422–431 (same); Scott §17.2.11, at 1136–1139 (same).

MetLife also points out that we need not follow trust law principles where trust law is "inconsistent with the language of the statute, its structure, or its purposes." *Hughes Aircraft Co.* v. *Jacobson*, 525 U. S. 432, 447 (1999) (internal quotation marks omitted). MetLife adds that to find a conflict here is inconsistent (1) with ERISA's efforts to avoid complex review proceedings, see *Varity Corp.* v. *Howe*, 516 U. S. 489, 497 (1996); (2) with Congress' efforts not to deter employers from setting up benefit plans, see *ibid.*, and (3) with an ERISA provision specifically allowing employers to administer their own plans, see 29

Opinion of the Court

U. S. C. §1108(c)(3).

But we cannot find in these considerations any significant inconsistency. As to the first, we note that trust law functions well with a similar standard. As to the second, we have no reason, empirical or otherwise, to believe that our decision will seriously discourage the creation of benefit plans. As to the third, we have just explained why approval of a conflicted trustee differs from review of that trustee's conflicted decisionmaking. As to all three taken together, we believe them outweighed by "Congress' desire to offer employees enhanced protection for their benefits." *Varity*, *supra*, at 497 (discussing "competing congressional purposes" in enacting ERISA).

The answer to the conflict question is less clear where (as here) the plan administrator is not the employer itself but rather a professional insurance company. Such a company, MetLife would argue, likely has a much greater incentive than a self-insuring employer to provide accurate claims processing. That is because the insurance company typically charges a fee that attempts to account for the cost of claims payouts, with the result that paying an individual claim does not come to the same extent from the company's own pocket. It is also because the marketplace (and regulators) may well punish an insurance company when its products, or ingredients of its products, fall below par. And claims processing, an ingredient of the insurance company's product, falls below par when it seeks a biased result, rather than an accurate one. Why, MetLife might ask, should one consider an insurance company *inherently* more conflicted than any other market participant, say, a manufacturer who might earn more money in the short run by producing a product with poor quality steel or a lawyer with an incentive to work more slowly than necessary, thereby accumulating more billable hours?

Conceding these differences, we nonetheless continue to

believe that for ERISA purposes a conflict exists. For one thing, the employer's own conflict may extend to its selection of an insurance company to administer its plan. An employer choosing an administrator in effect buys insurance for others and consequently (when compared to the marketplace customer who buys for himself) may be more interested in an insurance company with low rates than in one with accurate claims processing. Cf. Langbein, Trust Law as Regulatory Law, 101 Nw. U. L. Rev. 1315, 1323–1324 (2007) (observing that employees are rarely involved in plan negotiations).

For another, ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, §1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," *Firestone*, 489 U. S., at 113 (quoting §1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see §1132(a)(1)(B).

Finally, a legal rule that treats insurance company administrators and employers alike in respect to the *existence* of a conflict can nonetheless take account of the circumstances to which MetLife points so far as it treats those, or similar, circumstances as diminishing the *significance* or *severity* of the conflict in individual cases. See Part IV, *infra*.

## IV

We turn to the question of "how" the conflict we have just identified should "be taken into account on judicial review of a discretionary benefit determination." 552 U. S.

__ (2008).  In doing so, we elucidate what this Court set forth in *Firestone,* namely, that a conflict should "be weighed as a 'factor in determining whether there is an abuse of discretion.'"  489 U. S., at 115 (quoting Restatement §187, Comment *d;* alteration omitted).

We do not believe that *Firestone*'s statement implies a change in the *standard* of review, say, from deferential to *de novo* review.  Trust law continues to apply a deferential standard of review to the discretionary decisionmaking of a conflicted trustee, while at the same time requiring the reviewing judge to take account of the conflict when determining whether the trustee, substantively or procedurally, has abused his discretion.  See Restatement §187, Comments *d–j; id.,* §107, Comment *f;* Scott §18.2, at 1342–1344.  We see no reason to forsake *Firestone*'s reliance upon trust law in this respect.  See 489 U. S., at 111–115.

Nor would we overturn *Firestone* by adopting a rule that in practice could bring about near universal review by judges *de novo—i.e.,* without deference—of the lion's share of ERISA plan claims denials.  See Brief for America's Health Insurance Plans et al. as *Amici Curiae* 3–4 (many ERISA plans grant discretionary authority to administrators that combine evaluation and payment functions).  Had Congress intended such a system of review, we believe it would not have left to the courts the development of review standards but would have said more on the subject.  See *Firestone, supra,* at 109 ("ERISA does not set out the appropriate standard of review for actions under §1132(a)(1)(B)"); compare, *e.g.,* C. Gresenz et al., A Flood of Litigation? 8 (1999), http://www.rand.org/pubs/ issue_papers/2006/IP184.pdf (all Internet materials as visited June 9, 2008, and available in Clerk of Court's case file) (estimating that 1.9 million beneficiaries of ERISA plans have health care claims denied each year), with Caseload of Federal Courts Remains Steady Overall (Mar. 11, 2008), http://www.uscourts.gov/Press_Releases/2008/

caseload.cfm (257,507 total civil filings in federal court in 2007); cf. *Whitman* v. *American Trucking Assns., Inc.*, 531 U. S. 457, 468 (2001) (Congress does not "hide elephants in mouseholes").

Neither do we believe it necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict. In principle, as we have said, conflicts are but one factor among many that a reviewing judge must take into account. Benefits decisions arise in too many contexts, concern too many circumstances, and can relate in too many different ways to conflicts—which themselves vary in kind and in degree of seriousness—for us to come up with a one-size-fits-all procedural system that is likely to promote fair and accurate review. Indeed, special procedural rules would create further complexity, adding time and expense to a process that may already be too costly for many of those who seek redress.

We believe that *Firestone* means what the word "factor" implies, namely, that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one. This kind of review is no stranger to the judicial system. Not only trust law, but also administrative law, can ask judges to determine lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together. See Restatement §187, Comment *d;* cf., *e.g., Citizens to Preserve Overton Park, Inc.* v. *Volpe*, 401 U. S. 402, 415–417 (1971) (review of governmental decision for abuse of discretion); *Universal Camera Corp.* v. *NLRB*, 340 U. S. 474 (1951) (review of agency factfinding).

In such instances, any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance. The conflict of

Opinion of the Court

interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. See Langbein, *supra*, at 1317–1321 (detailing such a history for one large insurer). It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits. See Herzel & Colling, The Chinese Wall and Conflict of Interest in Banks, 34 Bus. Law 73, 114 (1978) (recommending interdepartmental information walls to reduce bank conflicts); Brief for Blue Cross and Blue Shield Association as *Amicus Curiae* 15 (suggesting that insurers have incentives to reward claims processors for their accuracy); cf. generally J. Mashaw, Bureaucratic Justice (1983) (discussing internal controls as a sound method of producing administrative accuracy).

The Court of Appeals' opinion in the present case illustrates the combination-of-factors method of review. The record says little about MetLife's efforts to assure accurate claims assessment. The Court of Appeals gave the conflict weight to some degree; its opinion suggests that, in context, the court would not have found the conflict alone determinative. See 461 F. 3d, at 666, 674. The court instead focused more heavily on other factors. In particular, the court found questionable the fact that MetLife had encouraged Glenn to argue to the Social Security Administration that she could do no work, received the bulk of the benefits of her success in doing so (the remainder going to the lawyers it recommended), and then ignored the agency's finding in concluding that Glenn could in fact do

sedentary work. See *id.*, at 666–669. This course of events was not only an important factor in its own right (because it suggested procedural unreasonableness), but also would have justified the court in giving more weight to the conflict (because MetLife's seemingly inconsistent positions were both financially advantageous). And the court furthermore observed that MetLife had emphasized a certain medical report that favored a denial of benefits, had deemphasized certain other reports that suggested a contrary conclusion, and had failed to provide its independent vocational and medical experts with all of the relevant evidence. See *id.,* at 669–674. All these serious concerns, taken together with some degree of conflicting interests on MetLife's part, led the court to set aside MetLife's discretionary decision. See *id.,* at 674–675. We can find nothing improper in the way in which the court conducted its review.

Finally, we note that our elucidation of *Firestone*'s standard does not consist of a detailed set of instructions. In this respect, we find pertinent this Court's comments made in a somewhat different context, the context of court review of agency factfinding. See *Universal Camera Corp.*, *supra.* In explaining how a reviewing court should take account of the agency's reversal of its own examiner's factual findings, this Court did not lay down a detailed set of instructions. It simply held that the reviewing judge should take account of that circumstance as a factor in determining the ultimate adequacy of the record's support for the agency's own factual conclusion. *Id.,* at 492–497. In so holding, the Court noted that it had not enunciated a precise standard. See, *e.g.*, *id.*, at 493. But it warned against creating formulas that will "falsif[y] the actual process of judging" or serve as "instrument[s] of futile casuistry." *Id.,* at 489. The Court added that there "are no talismanic words that can avoid the process of judgment." *Ibid.* It concluded then, as we do now, that the

Cite as: 554 U. S. ____ (2008)          13

Opinion of the Court

"[w]ant of certainty" in judicial standards "partly reflects the intractability of any formula to furnish definiteness of content for all the impalpable factors involved in judicial review." *Id.,* at 477.

We affirm the decision of the Court of Appeals.

*It is so ordered.*

Opinion of ROBERTS, C. J.

# SUPREME COURT OF THE UNITED STATES

————

No. 06–923

————

## METROPOLITAN LIFE INSURANCE COMPANY, ET AL., PETITIONERS *v.* WANDA GLENN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SIXTH CIRCUIT

[June 19, 2008]

CHIEF JUSTICE ROBERTS, concurring in part and concurring in the judgment.

I join all but Part IV of the Court's opinion. I agree that a third-party insurer's dual role as a claims administrator and plan funder gives rise to a conflict of interest that is pertinent in reviewing claims decisions. I part ways with the majority, however, when it comes to *how* such a conflict should matter. See *ante*, at 8–13. The majority would accord weight, of varying and indeterminate amount, to the existence of such a conflict in every case where it is present. See *ante*, at 10–11. The majority's approach would allow the bare existence of a conflict to enhance the significance of other factors already considered by reviewing courts, even if the conflict is not shown to have played any role in the denial of benefits. The end result is to increase the level of scrutiny in every case in which there is a conflict—that is, in many if not most ERISA cases—thereby undermining the deference owed to plan administrators when the plan vests discretion in them.

I would instead consider the conflict of interest on review only where there is evidence that the benefits denial was motivated or affected by the administrator's conflict. No such evidence was presented in this case. I would nonetheless affirm the judgment of the Sixth Circuit, because that court was justified in finding an abuse of

Opinion of ROBERTS, C. J.

discretion on the facts of this case—conflict or not.

In *Firestone Tire & Rubber Co.* v. *Bruch*, 489 U. S. 101 (1989), this Court recognized that plan sponsors could, by the terms of the plan, reserve the authority to make discretionary claims decisions that courts would review only for an abuse of that discretion. *Id.,* at 111. We have long recognized "the public interest in encouraging the formation of employee benefit plans." *Pilot Life Ins. Co.* v. *Dedeaux*, 481 U. S. 41, 54 (1987). Ensuring that reviewing courts respect the discretionary authority conferred on ERISA fiduciaries encourages employers to provide medical and retirement benefits to their employees through ERISA-governed plans—something they are not required to do. Cf. *Aetna Health Inc.* v. *Davila*, 542 U. S. 200, 215 (2004).

The conflict of interest at issue here is a common feature of ERISA plans. The majority acknowledges that the "lion's share of ERISA plan claims denials" are made by administrators that both evaluate and pay claims. See *ante*, at 9; see also *Guthrie* v. *National Rural Elec. Coop. Assn. Long-Term Disability Plan*, 509 F. 3d 644, 650 (CA4 2007) (describing use of dual-role administrators as "'simple and commonplace'" (quoting *Colucci* v. *Agfa Corp. Severance Pay Plan*, 431 F. 3d 170, 179 (CA4 2005)); *Hall* v. *UNUM Life Ins. Co.*, 300 F. 3d 1197, 1205 (CA10 2002) (declining to permit additional evidence on review "whenever the same party is the administrator and payor" because such an arrangement is "commonplace"). For this reason, the majority is surely correct in concluding that it is important to retain deferential review for decisions made by conflicted administrators, in order to avoid "near universal review by judges *de novo*." *Ante*, at 9.

But the majority's approach does not do so. Saying that courts should consider the mere existence of a conflict in every case, without focusing that consideration in any way, invites the substitution of judicial discretion for the

Opinion of ROBERTS, C. J.

discretion of the plan administrator. Judicial review under the majority's opinion is less constrained, because courts can look to the bare presence of a conflict as authorizing more exacting scrutiny.

This problem is exacerbated because the majority is so imprecise about how the existence of a conflict should be treated in a reviewing court's analysis. The majority is forthright about this failing. In a triumph of understatement, the Court acknowledges that its approach "does not consist of a detailed set of instructions." *Ante*, at 12. The majority tries to transform this vice into a virtue, pointing to the practice of courts in reviewing agency determinations. See *ante*, at 10, 12–13. The standard of review for agency determinations has little to nothing to do with the appropriate test for identifying ERISA benefits decisions influenced by a conflict of interest. In fact, we have rejected this analogy before, see *Firestone*, *supra*, at 109–110 (rejecting the arbitrary and capricious standard of review under the Labor Management and Relations Act for claims brought under ERISA §1132(a)(1)(B)), and not even the Solicitor General, whose position the majority accepts, endorses it, see Brief for United States as *Amicus Curiae* 29–30, n. 3 (noting the "key differences between ERISA and the administrative law context").

Pursuant to the majority's strained analogy, *Universal Camera Corp.* v. *NLRB*, 340 U. S. 474 (1951), makes an unexpected appearance on stage. The case is cited for the proposition that the lack of certainty in judicial standards "'partly reflects the intractability of any formula to furnish definiteness of content for all the impalpable factors involved in judicial review.'" *Ante*, at 13 (quoting *Universal Camera, supra,* at 477). Maybe. But certainty and predictability are important criteria under ERISA, and employers considering whether to establish ERISA plans can have no notion what it means to say that a standard feature of such plans will be one of the "impalpable factors

Opinion of ROBERTS, C. J.

involved in judicial review" of benefits decisions.  See *Rush Prudential HMO, Inc.* v. *Moran*, 536 U. S. 355, 379 (2002) (noting "ERISA's policy of inducing employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct").  The Court leaves the law more uncertain, more unpredictable than it found it.  Cf. O. Holmes, The Common Law 101 (M. Howe ed. 1963) ("[T]he tendency of the law must always be to narrow the field of uncertainty").

Nothing in *Firestone* compels the majority's kitchen-sink approach.  In *Firestone*, the Court stated that a conflict of interest "must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'"  489 U. S., at 115 (quoting Restatement (Second) of Trusts §187, Comment *d* (1959) (alteration in original)).  The cited Restatement confirms that treating the existence of a conflict of interest "as a factor" means considering whether the conflicted trustee "is *acting* from an improper motive" so as to "further some interest of his own or of a person other than the beneficiary."  *Id.,* §187, Comment *g* (emphasis added).  See also *post*, at 5–7 (SCALIA, J., dissenting).  The language in *Firestone* does not specify whether the existence of a conflict should be thrown into the mix in an indeterminate way along with all other considerations pertinent in reviewing a benefits decision, as the majority would apparently have it, or instead weighed to determine whether it actually affected the decision.

It is the actual motivation that matters in reviewing benefits decisions for an abuse of discretion, not the bare presence of the conflict itself.  Consonant with this understanding, a conflict of interest can support a finding that an administrator abused its discretion only where the evidence demonstrates that the conflict actually motivated or influenced the claims decision.  Such evidence may take many forms.  It may, for example, appear on the face of the plan, see *Pegram* v. *Herdrich*, 530 U. S. 211, 227, n. 7

Opinion of ROBERTS, C. J.

(2000) (offering hypothetical example of a plan that gives "a bonus for administrators who denied benefits to every 10th beneficiary"); it may be shown by evidence of other improper incentives, see *Armstrong* v. *Aetna Life Ins. Co.*, 128 F. 3d 1263, 1265 (CA8 1997) (insurer provided incentives and bonuses to claims reviewers for "claims savings"); or it may be shown by a pattern or practice of unreasonably denying meritorious claims, see *Radford Trust* v. *First Unum Life Ins. Co.*, 321 F. Supp. 2d 226, 247 (Mass. 2004) (finding a "pattern of erroneous and arbitrary benefits denials, bad faith contract misinterpretations, and other unscrupulous tactics"). The mere existence of a conflict, however, is not justification for heightening the level of scrutiny, either on its own or by enhancing the significance of other factors.

The majority's application of its approach confirms its overbroad reach and indeterminate nature. Three sets of circumstances, the majority finds, warrant the conclusion that MetLife's conflict of interest influenced its decision to deny Glenn's claim for benefits: MetLife's failure to account for the Social Security Administration's finding of disability after MetLife encouraged Glenn to apply to the agency for benefits; MetLife's emphasis of favorable medical reports and deemphasis of unfavorable ones; and MetLife's failure to provide its internal experts with all the relevant evidence of Glenn's medical condition. See *ante*, at 11–12. These facts simply prove that MetLife abused its discretion in failing to consider relevant, expert evidence on the question of Glenn's disability status. There is no basis for supposing that the conflict of interest lent any greater significance to these factors, and no logical reason to give the factors an extra dollop of weight because of the structural conflict.

Even the fact that MetLife took "seemingly inconsistent positions" regarding Glenn's claim for Social Security benefits falls short. *Ante*, at 12. That MetLife stood to

6          METROPOLITAN LIFE INS. CO. *v.* GLENN

Opinion of ROBERTS, C. J.

gain financially from ignoring the agency's finding and denying Glenn's claim does not show improper motivation. If it did, every decision to deny a claim made by a dual-role administrator would automatically qualify as an abuse of discretion. No one here advocates such a *per se* rule. As for MetLife's referral of Glenn to the agency, the plan itself required MetLife to deduct an estimated amount of Social Security disability benefits "whether or not [Glenn] actually appl[ied] for and receive[d] those amounts," App. 167a, and to assist plan participants like Glenn in applying for Social Security benefits, see *id.*, at 168a. Hence, it was not the conflict that prompted Met-Life to refer Glenn to the agency, but the plan itself, a requirement that any administrator, whether conflicted or not, would be obligated to enforce.

In fact, there is no indication that the Sixth Circuit viewed the deficiencies in MetLife's decision as a product of its conflict of interest. Apart from remarking on the conflict at the outset and the conclusion of its opinion, see 461 F. 3d 660, 666, 674 (2006), the court never again mentioned MetLife's inconsistent obligations in the course of reversing the administrator's decision. As the court explained, MetLife's decision "was not the product of a principled and deliberative reasoning process." *Id.,* at 674. MetLife failed to acknowledge the contrary conclusion reached by the Social Security Administration, gave scant weight to the contrary medical evidence supplied by Dr. Patel, and neglected to provide its internal experts with Dr. Patel's reports. *Ibid.*; see also *ante*, at 11–12. In these circumstances, the Court of Appeals was justified in finding an abuse of discretion wholly apart from MetLife's conflict of interest.

I would therefore affirm the judgment below.

Opinion of KENNEDY, J.

# SUPREME COURT OF THE UNITED STATES

————

No. 06–923

————

## METROPOLITAN LIFE INSURANCE COMPANY, ET AL., PETITIONERS *v.* WANDA GLENN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[June 19, 2008]

JUSTICE KENNEDY, concurring in part and dissenting in part.

The Court sets forth an important framework for the standard of review in ERISA cases, one consistent with our holding in *Firestone Tire & Rubber Co.* v. *Bruch*, 489 U. S. 101 (1989). In my view this is correct, and I concur in those parts of the Court's opinion that discuss this framework. In my submission, however, the case should be remanded so that the Court of Appeals can apply the standards the Court now explains to these facts.

There are two ways to read the Court's opinion. The Court devotes so much of its discussion to the weight to be given to a conflict of interest that one should conclude this has considerable relevance to the conclusion that MetLife wrongfully terminated respondent's disability payments. This interpretation is the one consistent with the question the Court should address and with the way the case was presented to us. A second reading is that the Court concludes MetLife's conduct was so egregious that it was an abuse of discretion even if there were no conflict at all; but if that is so then the first 11 pages of the Court's opinion is unnecessary to its disposition.

The Court has set forth a workable framework for taking potential conflicts of interest in ERISA benefits disputes into account. It is consistent with our opinion in

Opinion of KENNEDY, J.

*Firestone*, and it protects the interests of plan beneficiaries without undermining the ability of insurance companies to act simultaneously as plan administrators and plan funders. The linchpin of this framework is the Court's recognition that a structural conflict "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." *Ante*, at 11. And it is on this point that the Court's opinion parts company with the decision of the Court of Appeals for the Sixth Circuit. The Court acknowledges that the structural conflict of interest played some role in the Court of Appeals' determination that MetLife had abused its discretion. *Ibid.* But as far as one can tell, the Court of Appeals made no effort to assess whether MetLife employed structural safeguards to avoid conflicts of interest, safeguards the Court says can cause the importance of a conflict to vanish.

The Court nonetheless affirms the judgment, without giving MetLife a chance to defend its decision under the standards the Court articulates today. In doing so, it notes that "[t]he record says little about MetLife's efforts to assure accurate claims assessment," *ibid.*, thereby implying that MetLife is to blame for failing to introduce structural evidence in the earlier proceedings. Until today's opinion, however, a party in MetLife's position had no notice of the relevance of these evidentiary considerations.

By reaching out to decide the merits of this case without remanding, the Court disadvantages MetLife solely for its failure to anticipate the instructions in today's opinion. This is a deviation from our practice, and it is unfair. Given the importance of evidence pertaining to structural

Cite as: 554 U. S. ____ (2008)          3

Opinion of KENNEDY, J.

safeguards, this case should have been remanded to allow the Court of Appeals to consider this matter further in light of the Court's ruling.

For these reasons, I concur in part but dissent from the order affirming the judgment.

Scalia, J., dissenting

# SUPREME COURT OF THE UNITED STATES

————

No. 06–923

————

## METROPOLITAN LIFE INSURANCE COMPANY, ET AL., PETITIONERS *v.* WANDA GLENN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[June 19, 2008]

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, dissenting.

I agree with the Court that petitioner Metropolitan Life Insurance Company (hereinafter petitioner) has a conflict of interest. A third-party insurance company that administers an ERISA-governed disability plan and that pays for benefits out of its own coffers profits with each benefits claim it rejects. I see no reason why the Court must volunteer, however, that *an employer* who administers its own ERISA-governed plan "clear[ly]" has a conflict of interest. See *ante*, at 5. At least one Court of Appeals has thought that while the insurance-company administrator has a conflict, the employer-administrator does not. See *Colucci* v. *Agfa Corp. Severance Pay Plan*, 431 F. 3d 170, 179 (CA4 2005). I would not resolve this question until it has been presented and argued, and the Court's unnecessary and uninvited resolution must be regarded as dictum.

The more important question is how the existence of a conflict should bear upon judicial review of the administrator's decision, and on that score I am in fundamental disagreement with the Court. Even if the choice were mine as a policy matter, I would not adopt the Court's totality-of-the-circumstances (so-called) "test," in which the existence of a conflict is to be put into the mix and given some (unspecified) "weight." This makes each case

unique, and hence the outcome of each case unpredict-able—not a reasonable position in which to place the administrator that has been explicitly given discretion by the creator of the plan, despite the existence of a conflict. See *ante*, at 3–4 (Roberts, C. J., concurring in part and concurring in judgment). More importantly, however, this is not a question to be solved by this Court's policy views; our cases make clear that it is to be governed by the law of trusts. Under that law, a fiduciary with a conflict does not abuse its discretion unless the conflict *actually* and *im-properly motivates* the decision. There is no evidence of that here.

## I

Our opinion in *Firestone Tire & Rubber Co.* v. *Bruch*, 489 U. S. 101 (1989), does not provide the answer to the all-important question in this case, but it does direct us to the answer. It held that federal courts hearing 29 U. S. C. §1132(a)(1)(B) claims should review the decisions of ERISA-plan administrators the same way that courts have traditionally reviewed decisions of trustees. 489 U. S., at 111. In trust law, the decision of a trustee who was not vested with discretion would be reviewed *de novo. Id.,* at 112–113. Citing the Restatement of Trusts current at the time of ERISA's enactment, *Firestone* acknowledged that courts traditionally would defer to trustees vested with discretion, but rejected that course in the case at hand because, among other reasons, the *Firestone* plan did not vest its administrator with discretion. *Id.,* at 111 (citing Restatement (Second) of Trusts §187 (1959)). Accordingly, *Firestone* had no occasion to consider the scope of, or limi-tations on, the deference accorded to fiduciaries with discretion. But in sheer dictum quoting a portion of one comment of the Restatement, our opinion said, "[o]f course, if a benefit plan gives discretion to an administra-tor or fiduciary who is operating under a conflict of inter-

SCALIA, J., dissenting

est, that conflict must be weighed as a 'facto[r] in deter-mining whether there is an abuse of discretion.'" 489 U. S., at 115 (quoting Restatement (Second) of Trusts §187, Comment *d*).

The Court takes that throwaway dictum literally and builds a castle upon it. See *ante*, at 9–12. But the dictum cannot bear that weight, and the Court's "elucidation" of the sentence does not reveal trust-law practice as much as it reveals the Justices' fondness for a judge-liberating totality-of-the-circumstances "test." The Restatement does indeed list in Comment *d* certain circumstances (including conflict of interest) that "may be relevant" to deciding whether a trustee has abused his discretion.[1] It does *not*, however, suggest that they should all be chucked into a brown paper bag and shaken up to determine the answer. Nowhere does it mention the majority's *modus operandi* of "weighing" all these factors together. To the contrary, the immediately following Comments *(e–l)* precisely elaborate upon *how* some of those factors (factor (1), extent of discre-tion, see Comment *j;* factor (4), existence of an external standard for judging reasonableness, see Comment *i;* factors (5) and (6), motives of the trustee and conflict of interest, see Comment *g*) are relevant—making very clear that each of them can be *alone* determinative, without the necessity of "weighing" other factors. These later Com-

_____

[1] Comment *d* provides in full: "*Factors in determining whether there is an abuse of discretion.* In determining the question whether the trustee is guilty of an abuse of discretion in exercising or failing to exercise a power, the following circumstances may be relevant: (1) the extent of the discretion conferred upon the trustee by the terms of the trust; (2) the purposes of the trust; (3) the nature of the power; (4) the existence or non-existence, the definiteness or indefiniteness, of an external standard by which the reasonableness of the trustee's conduct can be judged; (5) the motives of the trustee in exercising or refraining from exercising the power; (6) the existence or nonexistence of an interest in the trustee conflicting with that of the beneficiaries." Restatement (Second) of Trusts §187, Comment *d* (1959).

ments also address other factors not even included in the earlier listing, some of which can be alone determinative. See Comment *h*, Trustee's failure to use his judgment; Comment *k*, Limits of power of settlor to confer discretion.

Instead of taking the pain to reconcile the entirety of the Restatement section with the *Firestone* dictum, the Court treats the dictum like a statutory command, and makes up a standard (if one can call it that) to make sense of the dictum. The opinion is painfully opaque, despite its promise of elucidation. It variously describes the object of judicial review as "determining whether the trustee, substantively or procedurally, has abused his discretion" (*ante*, at 9), determining "the lawfulness of benefit denials" (*ante*, at 10), and as tantamount to "review of agency factfinding" (*ante*, at 12). How a court should go about conducting this review is unclear. The opinion is rife with instruction on what a court should *not* do. See *ante*, at 9–10. In the final analysis, the Court seems to advance a gestalt reasonableness standard (a "combination-of-factors method of review," the opinion calls it, *ante*, at 11), by which a reviewing court, mindful of being deferential, should nonetheless consider all the circumstances, weigh them as it thinks best, then divine whether a fiduciary's discretionary decision should be overturned.[2] Notwithstanding the Court's assurances to the contrary, *ante*, at 9,

---

[2] I do not take the Court to adopt respondent's position that courts should consider all the circumstances to determine *how much deference* a trustee's decision deserves. See Brief for Respondent 46–50. The opinion disavows that reading. See *ante*, at 9 ("We do not believe that *Firestone*'s statement implies a change in the *standard* of review, say, from deferential to *de novo* review"). Of course when one is speaking of deferring to the judgment of another decisionmaker, the notion that there are degrees of deference is absurd. There are degrees of *respect* for the decisionmaker, perhaps—but the court either defers, or it does not. "Some deference," or "less than total deference," is no deference at all.

Scalia, J., dissenting

that is nothing but *de novo* review in sheep's clothing.[3]

Looking to the common law of trusts (which is, after all, what the *holding* of *Firestone* binds us to do), I would adopt the entirety of the Restatement's clear guidelines for judicial review. In trust law, a court reviewing a trustee's decision would substitute its own *de novo* judgment for a trustee's only if it found either that the trustee had no discretion in making the decision, see *Firestone, supra*, at 111–112, or that the trustee had discretion but abused it, see Restatement (Second) of Trusts §187. Otherwise, the court would defer to the trustee. Cf. *Shelton* v. *King*, 229 U. S. 90, 94–95 (1913). "Abuse of discretion," as the Restatement uses the term, refers specifically to four distinct failures: the trustee acted dishonestly; he acted with some other improper motive; he failed to use judgment; or he acted beyond the bounds of a reasonable judgment. See Restatement (Second) of Trusts §187, Comment *e.*

The Restatement discusses all four of these manners of abusing discretion successively, in Comments *f, g, h,* and *i,* describing the aim of a court's inquiry into each. A trustee abuses his discretion by acting dishonestly when, for example, he accepts bribes. See *id.,* §187, Comment *f.* A trustee abuses his discretion by failing to use his judgment, when he acts "without knowledge of or inquiry into the relevant circumstances and merely as a result of his arbitrary decision or whim." *Id.,* §187, Comment *h.* A trustee abuses his discretion by acting unreasonably when his decision is substantively unreasonable either with regard to his exercise of a discretionary power or with

_____

[3] The Solicitor General proposes an equally gobbledygook standard: "Reasonableness Under The Totality Of The Circumstances," a.k.a. "[r]eview . . . as searching . . . as the facts and circumstances . . . warrant," by which a reviewing court takes "extra care" to ensure that a decision is reasonable. See Brief for United States as *Amicus Curiae* 22, 25.

regard to his assessment of whether the preconditions to that exercise have been met.[4]  See *id.*, §187, Comment *i*. And—most important for this case—a trustee abuses his discretion by acting on an improper motive when he acts "from a motive other than to further the purposes of the trust."  *Id.*, §187, Comment *g*.  Improper motives include "spite or prejudice or *to further some interest of his own* or of a person other than the beneficiary."  *Ibid.* (emphasis added).

   The four abuses of discretion are clearly separate and distinct.  Indeed, the circumstances the Restatement identifies as relevant for finding each abuse of discretion are not identified as relevant for finding the other abuses of discretion.  For instance, "the existence or non-existence, the definiteness or indefiniteness, of an external standard by which the reasonableness of the trustee's conduct can be judged," *id.*, §187, Comment *d*, is alluded to *only* in the later Comment dealing with abuse of discretion by acting beyond the bounds of reasonable judgment, *id.*, §187, Comment *i*.  And particularly relevant to the present case, "the existence or nonexistence of an interest in the trustee conflicting with that of the beneficiaries," *id.*, §187, Comment *d*, is mentioned only in the later Comment dealing with abuse of discretion by reason of improper motive, *id.*, §187, Comment *g*.  The other Comments do not even hint that a conflict of interest is relevant to determining whether one of the other three types of abuse of discretion exists.

   Common sense confirms that a trustee's conflict of

---

   [4]The latter is the sort of discretionary decision challenged in this case.  Petitioner, as a precondition to paying respondent's benefits, had to assess whether she was disabled.  Cf. Restatement (Second) of Trusts §187, Comment *i*, Illustration 9 (dealing with a trustee's assessment of a beneficiary's competence to manage property, which is the condition of the trustee's obligation to pay the principal of the trust to that beneficiary).

Scalia, J., dissenting

interest is irrelevant to determining the substantive reasonableness of his decision. A reasonable decision is reasonable whether or not the person who makes it has a conflict. If it were otherwise, the consequences would be perverse: A trustee without a conflict could take either of two reasonable courses of action, but a trustee with a conflict, facing the same two choices, would be compelled to take the course that avoids the appearance of self-dealing. He would have to do that even if he thought the other one would better serve the beneficiary's interest, lest his determination be set aside as unreasonable. It makes no sense to say that a lurking conflict of interest, or the mere identity of the trustee, can make a reasonable decision unreasonable, or a well-thought-out, informed decision uninformed or arbitrary. The Restatement echoes the commonsensical view: It explains that a court applying trust law must pretermit its inquiry into whether a trustee abused his discretion by acting unreasonably when there is no standard for evaluating reasonableness, but "[i]n such a case . . . the court will interpose if the trustee act[ed] dishonestly, or from some improper motive." *Id.*, §187, Comment *i*. That explanation plainly excludes the court's "weighing" of a trustee's conflict of interest.

A trustee's conflict of interest is relevant (and *only* relevant) for determining whether he abused his discretion by acting with an improper motive. It does not itself prove that he did so, but it is the predicate for an inquiry into motive, and can be part of the circumstantial evidence establishing wrongful motive. That circumstantial evidence could theoretically include the unreasonableness of the decision—but using it for that purpose would be entirely redundant, since unreasonableness *alone* suffices to establish an abuse of discretion. There are no gradations of reasonableness, so that one might infer that a trustee acted upon his conflict of interest when he chose a "less reasonable," yet self-serving, course, but not when he

chose a "more reasonable," yet self-serving, course. Reasonable is reasonable. A reasonable decision is one over which reasonable minds seeking the "best" or "right" answer could disagree. It is a course that a trustee acting in the best interest of the beneficiary *might* have chosen. Gradating reasonableness, and making it a "factor" in the improper-motive determination, would have the precise effect of eliminating the discretion that the settlor has intentionally conferred upon the trustee with a conflict, for such a trustee would be foreclosed from making an otherwise reasonable decision. See *supra*, at 6–7.

Respondent essentially asks us to presume that all fiduciaries with a conflict act in their selfish interest, so that their decisions are automatically reviewed with less than total deference (how much less is unspecified). But if one is to draw any inference about a fiduciary from the fact that he made an informed, reasonable, though apparently self-serving discretionary decision, it should be that he *suppressed* his selfish interest (as the settlor anticipated) in compliance with his duties of good faith and loyalty. See, *e.g., Gregory* v. *Moose*, 266 Ark. 926, 933–934, 590 S. W. 2d 665, 670–671 (1979) (citing *Jarvis* v. *Boatmen's Nat. Bank of St. Louis*, 478 S. W. 2d 266, 273 (Mo. 1972)). Only such a presumption can vindicate the trust principles and ERISA provisions that permit settlors to appoint fiduciaries with a conflict in the first place. See *Pegram* v. *Herdrich*, 530 U. S. 211, 225 (2000).

## II

Applying the Restatement's guidelines to this case, I conclude that the only possible basis for finding an abuse of discretion in this case would be unreasonableness of petitioner's determination of no disability. The principal factor suggesting that is the finding of disability by the Social Security Administration (SSA). But ERISA fiduciaries need not always reconcile their determinations with

SCALIA, J., dissenting

the SSA's, nor is the SSA's conclusion entitled to any special weight. Cf. *Black & Decker Disability Plan* v. *Nord*, 538 U. S. 822, 834 (2003). The SSA's determination may have been wrong, and it was contradicted by other medical opinion.

We did not take this case to make the reasonableness determination, but rather to clarify when a conflict exists, and how it should be taken into account. I would remand to the Court of Appeals for its determination of the reasonableness of petitioner's denial, without regard to the existence of a conflict of interest.